# The Spring Valley Coal Company

## v.

# The People of the State of Illinois.

*Filed at Ottawa October 11, 1895.*

1. Fraud—*must be proved.* Fraud in never presumed, but must be proved.

2. Evidence—*over-valuation by assessor is not, per se, fraud.* The mere fact of over-valuation of property in assessing it for taxation will not, of itself, establish fraud on the part of the assessor. *Pacific Hotel Co. v. Lieb,* 83 Ill. 602, distinguished.

3. Taxes—*over-valuation by assessor will not be rectified on application for judgment.* If an assessor, through a mistake or error of judgment, has assessed property at too high a valuation, his action can not be rectified or reversed on an application for judgment against the property.

4. Same—*fraudulent over-valuation—effect of review by town and county boards.* A tax is not avoided by a fraudulent valuation by the assessor, where the tax-payer petitions the town board of review and secures a reduction in some of the values, and on a further appeal to the county board obtains, after a full hearing, still further reductions.

5. Same—*levy may refer to and incorporate appropriation ordinance.* While an ordinance levying a tax should state in express words the purposes for which appropriations are made and the sum or amount appropriated for each purpose, a reference instead to the appropriation ordinance containing the details making such ordinance part of the levy is a mere informality, not affecting the substantial justice of the tax, and is cured by section 191 of the Revenue law.

6. Same—*statute prohibition against further appropriations—library fund.* The statutory prohibition of further appropriations after the passage of the ordinance containing the annual appropriation bill, in a city, applies to a tax for the library fund, which the city is empowered, but not required, to levy.

7. Same—*failure of school officers to sign levy of school tax not fatal—amendment.* A tax for school purposes is not invalidated by failure of the members of the board of education present at the meeting at which it is voted, to sign the certificate, where they are present at the hearing in the county court, and state that they would have signed it had they known that it was necessary, and the court thereupon permits the certificate to be amended and signed. *People v. Smith,* 149 Ill. 549, distinguished.

157 543
161 518
157 543
171 546
157 543
175 390
157 543
183 250
183 314
157 543
184 245
157 543
f187 2 12
187 4 16
157 543
188 2 18
157 543
192 8228
157 543
200 7145
201 1361
157 543
213 5177
213 2617
157 543
215 7129

8. SAME—*power of county court to reduce excessive assessment.* Under section 191 of the Revenue law the county court has power, in reviewing an assessment on application for judgment, to reduce the rate for school purposes to that allowed by statute.

APPEAL from the County Court of Bureau county; the Hon. ROBERT R. GIBBONS, Judge, presiding.

ALFRED R. GREENWOOD, for appellant:

Where the valuation is so grossly out of the way as to show that the assessor could not have been honest, it is accepted as evidence of fraud upon his part against the tax-payer, and the court will interpose.    *Hotel Co.* v. *Lieb,* 83 Ill. 602.

It has been held that the action of the board is conclusive as to valuation, but it is assumed that this has reference only to cases where there has been no fraud. (*Schmidt* v. *Williams,* 82 Ill. 117.)    It can, however, be assailed for fraud and want of jurisdiction.    *Spencer* v. *People,* 68 Ill. 510.

The county court has jurisdiction.    Const. 1870, art. 6, sec. 18; 1 Starr & Curtis, 134; 2 id. p. 2083; Rev. Stat. chap. 120, secs. 187, 185.

There being no appeal from the action of the county board in reviewing an assessment, and its action being, in its nature, judicial, (*Weaver* v. *Devendorff,* 3 Denio, 117,) the rule that there is no appeal, (*People* v. *Iron Co.* 89 Ill. 116,) we respectfully submit, does not appear to afford the protection contemplated by this provision of the constitution.

When the record of the ordinance levying taxes fails to show that the yeas and nays were taken upon its passage, as required by section 41 of the Revised Statutes, such disregard of the provisions of the statute renders the assessment of the city tax void.    *Stuckert* v. *City of East Saginaw,* 22 Mich. 104; *Spangler* v. *Jacobs,* 14 Ill. 297; *Riverside Co.* v. *Howell,* 113 id. 256; 1 Dillon on Mun. Corp. (3d ed.) 303.

When the statute provides the mode in which the taxes are to be levied, and provides that the city council shall, by ordinance, specify in detail the purpose for which appropriations are made, etc., these requirements, being for the protection of the citizen, are mandatory, and must be strictly complied with. *People* v. *Railroad Co.* 116 Ill. 401; *Riverside Co.* v. *Howell,* 113 id. 256; Cooley on Taxation, 295; *Edwards* v. *Wall,* 13 Wall. 307; *People* v. *Lee,* 112 Ill. 113.

Where the statute points out the method of assessing and levying taxes, such method must be followed. *People* v. *Lee,* 112 Ill. 113.

The object of the legislature is to provide a uniform mode of assessing and collecting municipal taxes. *Sparland* v. *Barnes,* 98 Ill. 597; *Updike* v. *Wright,* 81 id. 49; *Weber* v. *Traubel,* 95 id. 427; *Binkert* v. *Jansen,* 94 id. 292.

MAURICE T. MOLONEY, Attorney General, and T. J. SCOFIELD and M. L. NEWELL, of counsel, and WATTS A. JOHNSON, State's Attorney, for the People:

The assessor may have made a mistake and assessed the property higher than it should have been assessed, but the mistake was a mere error of judgment, which can not be reversed and rectified on an application for judgment against the property assessed. *Bridge Co.* v. *People,* 145 Ill. 596; *Spencer* v. *People,* 68 id. 510; *People* v. *Bridge Co.* 89 id. 116.

Nor had the court the power to declare void the action of said board of supervisors, unless said board was actuated by wrong and fraudulent motives in their action, which alone could give the court jurisdiction. *People* v. *Bridge Co.* 89 Ill. 116; *Bridge Co.* v. *People,* 145 id. 596.

Failure, through ignorance, on the part of the members of the board of education to sign the certificate is only an informality, and does not affect the substantial justice of said school tax, and the court properly permitted said certificate to be amended to conform to the facts in the case. Rev. Stat. chap. 120, sec. 191; *Buck* v.

*People,* 78 Ill. 560; *Chiniquy* v. *People,* id. 570; *Purrington* v. *People,* 79 id. 11; *People* v. *Smith,* 149 id. 549.

Mr. Justice Baker delivered the opinion of the court:

This is an appeal from the judgment and order of sale rendered by the county court of Bureau county, upon the petition and application of the collector for such judgment and order, for delinquent taxes.

The appellant company is the owner of the coal underlying the surface of about 13,904$\frac{45}{100}$ acres of land in the town of Hall, and underlying the surface of about 8868$\frac{23}{100}$ acres of land in the town of Selby, in said Bureau county. This includes the coal underlying a number of tracts of land the surface of which is owned by the company. Appellant is also the owner of certain coal mines or shafts located on said lands, and known as No. 1, No.' 2, No. 3 and No. 4, respectively, and likewise of numerous buildings, towers, engine and boiler houses, blacksmith shops, machine shops, stables, tenement houses and other improvements situated thereon. In making the assessment for the taxes of 1893 the assessor for Hall township assessed the coal rights owned by the company, or coal underlying the surface of lands, at $15 per acre, and also assessed the coal mines or shafts and other property of the appellant much higher than it had therefore been assessed for taxation. Appellant appeared before the town board of review and made complaint that the assessment of its properties was too high. Such proceedings were there had as that the assessment of the coal rights or underlying coal belonging to the company was reduced from $15 per acre to $3.50 per acre, and the assessment of one tract of land owned by the company was also reduced. Still considering itself aggrieved, appellant appealed to the county board of the county. In the board of supervisors of the county the committee to which the matter had been referred recommended that the underlying coal should be placed at $7.50 per acre, but the conclusion of

the majority of the board was that the assessment should be put at $3.50 per acre,—the amount fixed by the board of review. The board, however, reduced the assessment on shaft No. 1 from $40,000 to $25,000, the assessment on shaft No. 2 from $30,000 to $20,000, and the assessment on shaft No. 3 from $25,000 to $18,000.

It is claimed by appellant that the assessments and valuations of these shafts and these coal rights made by the assessor of the town of Hall were fraudulent, and therefore void, and that the county court, on the application of the collector for judgment, should have held them to be fraudulent and void, and should have refused to render any judgments against these properties for any part of the taxes assessed against them. The claim is also made by appellant that the assessment of its coal rights in the town of Selby, while not so flagrantly fraudulent as that made in Hall township, is nevertheless sufficiently so, by reason of the increase of assessment over prior years, without reason, to render the assessment void. It seems that these coal rights in the town of Selby were assessed for the taxes of 1892 at two dollars per acre, and for the taxes of 1893 at three dollars per acre.

Fraud is never presumed, and we find in the record no sufficient evidence of a fraudulent intent on the part of the assessor of Hall in fixing the valuations of the property of appellant, and, *a fortiori*, no evidence of fraud on the part of the assessor of Selby. The assessor of Hall, while sitting as a member of the board of review, no doubt expressed his opinion quite strongly that the assessments on the property of appellant should not be reduced; but he at the same time stated that if it would produce evidence that its property had been valued too high by him, he, as a member of the board, would be willing to make a reduction. The evidence of the alleged intimidation of the clerk of the board of review by threats of prosecution in the event he voted for reductions does

not impress us strongly. It is plain, from the testimony of the clerk, that he did not understand what was said to be such a threat. And, as matter of fact, very material reductions in some of the assessments were made by the board of review.

Great stress is laid upon the remark made in *Pacific Hotel Co.* v. *Lieb*, 83 Ill. 602, that where the valuation is so grossly out of the way as to show that the assessor could not have been honest in his valuation,—must reasonably have known that it was excessive,—it is accepted as evidence of a fraud upon his part against the tax-payer, and the court will interpose. The decision of the question of fraud or no fraud would no doubt depend upon the circumstances·under which, in each particular case, the excessive valuation was made. If it was manifest, from these circumstances, that the assessment could not have been honest, but was actuated by a malicious motive, then the conclusion of fraud would result. But the mere fact of over-valuation will not, of itself, establish fraud. (*Union Trust Co.* v. *Weber*, 96 Ill. 346; *Keokuk and Hamilton Bridge Co.* v. *People*, 145 id. 596.) And the rule is, that if the assessor, through a mistake or error of judgment, has assessed the property higher than it should have been assessed, his action cannot be rectified or reversed in an application for judgment against the property. (*Spencer & Gardner* v. *People*, 68 Ill. 510; *People* v. *Big Muddy Iron Co.* 89 id. 116; *English* v. *People*, 96 id. 566; *Keokuk and Hamilton Bridge Co.* v. *People, supra.*) The legislature has committed the subject of the review of assessments in the matter of valuation, in the first instance to the town board of review, and thereafter, in succession, to the board of supervisors of the county and the State Board of Equalization.

Even if we should assume that the values as fixed by the assessor of the town of Hall were fraudulently made by him, the results claimed by appellant do not follow. It petitioned the town board of review, and secured re-

ductions in some of the values.  It then appealed to the county board, and had before it a full hearing as to its supposed grievances, and secured from it still further reductions of values.  There is no intimation that the county board was governed or influenced by either fraud or intimidation.  Appellant having availed itself of the remedies afforded by the statute, the decision made by the board of supervisors was final and conclusive, and it must be regarded that the fraud, if any, that there was in the original assessment, was purged out of it, otherwise it would be in the power of appellant, by securing the election of a prejudiced or dishonest assessor, to avoid the payment of any taxes whatever upon its large and valuable property.

It is claimed that the assessment of one tract of land was increased by the board of review from $170 to $2500 without the notice that the law requires having been given to appellant.  As we understand the evidence, the change was made by the assessor himself, he having discovered that he had made a mistake as to locality of the tract, and that there were, in fact, twenty-one houses on it, instead of no improvements whatever, and his corrected assessment was concurred in both by the town board of review and the county board.

It is objected that the city tax of the city of Spring Valley was levied in pursuance of a tax levying ordinance that did not specify in detail the purposes for which the appropriations were made and the amounts appropriated for each purpose; that the city levied twenty cents on the $100 for library purposes, for which there was no authority whatever; and that it levied $14,650 on a valuation of $361,561, or $4.10 on the $100.  The city council passed an annual appropriation ordinance, and on the passage of that ordinance the yeas and nays were taken.  In it were specified the objects and purposes for which the appropriations were made, and the amount appropriated for each object or purpose.  The yeas and nays were

also taken on the passage of the tax levying ordinance. Said ordinance, if properly and formally drawn, should, upon its face and in express words, have specified in detail the purposes for which the appropriations had been made and the sum or amount appropriated for each purpose, respectively. (1 Starr & Curtis' Stat. 485, 486.) It, however, in express terms made reference to the annual appropriation ordinance that had been passed by the city council, and to the record thereof, and thereby. made said appropriation ordinance a part and parcel of the tax levying ordinance, and there can be no question but that said appropriation ordinance is sufficiently specific. It seems to us that the difference between stating, in express words, upon the face of the tax levy ordinance the details of the appropriations, and incorporating such details into the tax levy ordinance by reference to the general appropriation ordinance and the record of the same, which do give such details, may be regarded as an error or informality in the proceedings of the city council in levying the city tax that does not affect the substantial justice of the tax itself, and is therefore cured by section 191 of the Revenue law, as amended in 1873, and that said city tax is not vitiated or in any manner affected. (Laws of 1873, p. 48; 2 Starr & Curtis' Stat. p. 2087.) In *Mix* v. *People,* 106 Ill. 425, this court said (p. 430): "We do not understand it to be necessary to publish the ordinance levying the taxes. Such ordinance presupposes antecedent appropriations, and merely makes a levy to raise money to pay appropriations already made. The total amount of appropriations legally made is required to be ascertained prior to its passage."

The additional levy of two mills on the dollar attempted to be levied by the tax levy ordinance for the library fund stands upon a different footing. The record shows that a separate tax of twenty cents on the $100 was assessed for the library fund, and that it was not included in the $14,650, or in the rate per cent of $4.10 on

the $100 of valuation. The provision of the statute in regard to the library fund tax is, that it shall be levied in like manner with the general taxes of the city. (Laws of 1891, p. 160; Hurd's Stat. 1891, p. 924, sec. 1.) The corporate authorities are authorized to levy it, but are not required to levy it. In *City of Cairo* v. *Campbell*, 116 Ill. 305, it was held that the statutory prohibition of further appropriations after the passage of the ordinance containing the annual appropriation bill is obligatory upon the council, so far as the subject of appropriation belongs to the class which it is discretionary for that body to include in or omit from the annual appropriation bill. We think that the county court should have sustained the objections to the library fund tax, and that it was error to render judgment for the same.

There remains to be considered the claim that the ordinance levied $7418.78 in excess of the amount that the city was authorized by law to levy. A large deduction should be made from this supposed excess, for the appropriation bill made provision for $4000 to apply on bonded indebtedness. As we understand the record, the $361,561 was the valuation of the property within the city as equalized by the State Board of Equalization, and only such a per cent of the tax authorized by the ordinance was extended upon the tax books as was within the limits fixed by law, and the judgment of the court was not for an amount or for a rate per cent in excess of that which the city was authorized to levy. We are unable to perceive how appellant is injured by the judgment in that regard.

Objection is made to the school tax for district No. 3, township 16, range 11. That district is controlled by a board of education, consisting of a president and six other members. It appears from the record of the proceedings of the board that at a special meeting of the board held on July 19, 1893, there were present the president and five other members, and that a resolution was

adopted that the sum of $11,000 for school purposes and $1000 for building purposes be levied for the year 1893, and that the said sum or amount should be duly certified and returned to the township treasurer as required by law. It appears that the certificate made was signed thus: "Thos. Linsley, Pres., Joseph Hercer, Clerk, Directors District No. 3, township No. 16, range No. 11, Bureau county, Illinois." It appears from the evidence that all of the members of the board present at the meeting, except the president, voted for the resolution, and that the use of the word "directors" instead of the words "board of education" was through mere inadvertence. All of the members of the board who were present at the meeting appeared as witnesses at the hearing in the county court, and each testified that he was present at the meeting and voted for the school tax levy; that he did not sign the certificate of levy, because he did not know it was necessary, and that he would have signed it if he had known that it was necessary. And thereupon the court permitted the certificate to be amended and put in due form, and signed. We think there was no error in the action of the court. The power conferred by the statute upon the board of education was exercised at a lawful meeting of the board, and in substantial conformity with the decision of this court in *Lawrence* v. *Traner*, 136 Ill. 474.

This case is quite different from and is not governed by *People* v. *Smith*, 149 Ill. 549. In that case we said (p. 551): "It is to be observed, however, that there is in the proceedings of the board no order or direction that the certificate contemplated by said section of the statute be filed, or any attempt to authorize any person or persons to file the same. * * * It does not appear that the board took any action in regard to the matter of making and filing a certificate authorizing the extension of said tax. The only act performed was the making of said certificate by less than a majority of the board, without its

sanction or authority. The certificate filed was in no sense the act of the board of education, nor did it purport to be made by said board or under its authority." And further said: "To have permitted the amendment proposed would not be to correct a mistake or omission of the municipal body levying the tax, or of its officers, but would have been to then make a valid levy. There is no showing or pretence that any other members of the board knew of or assented to the making of the certificate filed, or that a failure to sign the same was an omission or mistake on their part. Indeed, in the offer accompanying the proposed amendment it is not shown or pretended, or offered to be shown, that any member of the board other than those signing it would originally have done so had it been brought to their knowledge." It is to be noted that almost or quite everything that was so conspicuously absent in the *Smith case* is to be found in the record in this case.

The trial court found that this school levy was in excess of the lawful amount, and by its judgment it reduced the rate from $3.20 to $2.28 on the $100. Section 191 of the Revenue law provides that the court shall hear and determine the matter of objections to applications for judgments for taxes in a summary manner, and shall pronounce judgment as the right of the case may be, and that it shall give judgment for such taxes as shall appear to be due. We think there was no error in the ruling of the court. *Buck* v. *People*, 78 Ill. 560, *Chiniquy* v. *People*, id. 570, and *Purrington* v. *People*, 79 id. 11, are authorities that seem to sustain the judgment in respect to these school taxes.

A few minor points are made by counsel, but they are sufficiently disposed of by what we have already said.

The judgment for the library fund tax is reversed. In all other respects the judgment is affirmed. The costs of this appeal will be taxed against appellant.

*Judgment affirmed in part and reversed in part.*