## MORAN *v.* GROSSE POINTE TOWNSHIP.

1. TAXATION—PROCEDURE TO OBTAIN RELIEF FROM OVERASSESSMENT.
   One claiming an overassessment of property tax by local assessing officer should first apply to the board of review and then the State tax commission, pay alleged illegal taxes under protest and bring suit to recover amount paid.

2. SAME—ASSESSMENT—CASH VALUE.
   For purposes of taxation, property must be assessed at its true cash value (Const. 1908, art. 10, § 7).

3. SAME—DETERMINATION OF TRUE CASH VALUE—TEMPORARY ECONOMIC CONDITIONS—EVIDENCE.
   A single sale or two of property does not determine the true cash value, as there may be peculiar and temporary economic conditions that determine a price, especially in the case of highly expensive and valuable property for which there may temporarily be little demand.

4. SAME—DETERMINATION OF TRUE CASH VALUE—ELEMENTS CONSIDERED.
   In determining the true cash value of property for purposes of assessment for taxes, proper percentages for depreciation, careful study of local values as affected by costs, recent cash sales and other elements must be considered and while the applied science for valuation and appraisal of property does not necessarily evolve the true value with mathematical exactitude, a much fairer degree of accuracy is arrived at than existed without its application.

5. SAME—CASH VALUE.
   For purposes of the general property tax law, the term "cash value" means the usual selling price that could be obtained for the property at the time of assessment but not the price obtainable at a forced or auction sale (1 Comp. Laws 1929, § 3415).

6. SAME—USUAL SELLING PRICE.

Where property is singular in character and sales are separated by many years, there is no "usual selling price" in the sense the expression is used to describe the focus of buyers and sellers of commodities actively exchanged in an open market, but such term does provide a standard for a hypothetical or fictitious market by which assessors determine the factors which motivate buyers and sellers to exchange their interests and for assessors to exercise their judgment in an honest effort to determine at what point the inertia to trade is overcome (1 Comp. Laws 1929, § 3415).

7. SAME—CASH VALUE.

The legislative statement of the meaning of "cash value" is really a statement of tests to be applied in determining cash value, is not exclusive or inclusive, as the tax law must be read as a whole, the general purpose of the law being to subject property to a proportionate payment of public levies (1 Comp. Laws 1929, § 3415).

8. SAME—REPRODUCTION COST LESS DEPRECIATION.

The use of reproduction cost less depreciation as a basis for determining the assessed valuation of property, with allowances for obsolescence and other relevant factors, is not unfair or fundamentally wrong so long as the result is fair and discrimination is absent.

9. SAME—ASSESSMENT—USE OF VALUATION FOR PREVIOUS YEARS—DEPRECIATION—FRAUD.

Conduct of supervisor, in his role as assessing officer, in merely copying the valuation as found on the books for previous years as revised by the application of an allowance for depreciation of buildings and by a further percentage reduction recommended by the State tax commission does not constitute fraudulent conduct in the assessment of a valuable residential property, although a more careful examination and reappraisal of the property would have been preferable (Const. 1908, art. 10, § 7; 1 Comp. Laws 1929, §§ 3415, 3547).

10. SAME—ASSESSMENT—DISCRIMINATION.

No determination is made as to whether or not property, not waterfront property, in same township as that of plaintiff's waterfront property was underassessed and resulted in illegal discrimination where the facts with respect to such issue are not before the court.

11. Same—Assessment—Fraud—Final Determination by State Tax Commission.

In the absence of fraud, the determination of the State tax commission is final as to the matter of assessment of property for taxes as it has general supervision of the administration of the property tax laws of the State (1 Comp. Laws 1929, §§ 3543–3547, 3713).

12. Same—Assessment—Courts.

Courts are slow to interpose their judgment to say that the assessment of property for taxes has transgressed reasonable limits.

13. Costs—Public Question—Assessment for Taxes.

No costs are allowed in test or companion cases involving the assessment of property for taxes, where the question involved is a public one.

Appeal from Wayne; Ferguson (Frank B.), J. Submitted January 10, 1947. (Docket No. 72, Calendar No. 43,612.) Decided April 8, 1947. Rehearing denied May 16, 1947.

Assumpsit by Serena M. Moran against Grosse Pointe Township and others to recover taxes paid under protest. Board of Education of Rural Agricultural School District No. 1, County of Wayne and its treasurer intervene. Judgment for defendant. Plaintiff appeals. Affirmed.

*Fred A. Behr* and *John R. Watkins* (*Clarence J. Boldt, Jr.,* of counsel), for plaintiff.

*Julius L. Berns,* for Grosse Pointe Township and its treasurer.

*Glenn M. Coulter* (*Jack Newcombe,* of counsel), for Board of Education of Rural Agricultural School District No. 1.

· *James N. McNally,* for County of Wayne and its treasurer.

BUTZEL, J.   Plaintiff, a resident of the village of Grosse Pointe Park, Wayne county, Michigan, brought suit against Grosse Pointe township and its treasurer to recover taxes levied against her property and paid under protest.   The property consists of the northerly half of lot 20, lots 21 and 22 of the Windmill Pointe subdivision of private claim 696, and part of private claim 126 and 127, 379 and 570 lying south of Jefferson avenue, city of Detroit and village of Grosse Pointe Park, Michigan, according to the plat thereof in liber 37 of plats, pages 5 and 6, Wayne county register's office. The record does not describe the property in detail but it does show that a residence is located thereon, that it abuts Lake St. Clair, and that after allowance for depreciation, it was assessed at $146,010; plaintiff claims that it should not have been assessed at more than $75,000.   The public maps show that there is but a limited amount of lake frontage beyond the city of Detroit in Wayne county.   The record does not show what restrictions, if any, exist as to the use of property, building lines, the limited market for such properties due to the scarcity of potential owners with large incomes, the difficulties as well as costs of service, upkeep, or other elements that may make such elaborate homes less attractive and more difficult to dispose of at the present time.   Neither does the record show the initial cost of such homes and the amounts spent on improvements, if any.

In accordance with Act No. 206, §§ 29, 30, Pub. Acts 1893, as amended by Act No. 326, Pub. Acts 1907 (1 Comp. Laws 1929, §§ 3417, 3418 [Stat. Ann.

§§ 7.29 and 7.30]) and Act No. 234, Pub. Acts 1941 (Comp. Laws Supp. 1945, § 3417 [Stat. Ann. 1946 Cum. Supp. § 7.29]), plaintiff, dissatisfied with the assessment, submitted a written complaint and appeared before the board of review for the township. She claimed that the assessment was arbitrary, grossly excessive, discriminatory, fraudulent, invalid and made in utter disregard of the true cash value of the premises involved; and further, that numerous other parcels (not fronting on the lake shore) were grossly under-assessed, thus throwing an extra tax burden upon plaintiff's property. A hearing was had, but the board of review refused to change the assessment.

Thereupon, in accordance with Act No. 206, § 152, Pub. Acts 1893, as amended (1 Comp. Laws 1929, § 3547 [Stat. Ann. § 7.210]) plaintiff filed a written complaint with the board of State tax commissioners, and after a hearing the relief as prayed for was denied. Plaintiff thereupon paid under protest the sum of $2,473.41, the amount levied, and brought the instant suit to recover this sum.

She claims that the supervisor in the first instance based the assessment (with but a few exceptions) on the amounts fixed by the assessment roll of 1939, and that he has since merely copied these assessments as revised only by the application of an allowance for depreciation of buildings and by a further percentage reduction recommended by the board of State tax commissioners and adopted by the present supervisor (1945) and his predecessors in office. Plaintiff claims that this was not a proper or sufficient exercise of judgment as to the true cash value of the property, that market factors influencing the true cash value of the properties were intentionally and fraudulently ignored in the preparation of the 1945 assessments, resulting in gross over-

assessments of the properties of plaintiff and some others and underassessment of properties not fronting on the lake, compared with their true cash values; and that this amounts to a fraudulent and illegal discrimination against plaintiff and places an undue, excessive, discriminatory and unlawful share of the public burden on plaintiff and her property. She claims that the correct assessment should not have been in excess of $75,000.

Thirty-two other related cases, instituted by other property owners against the same defendants, are pending. In each of them, similar charges are made. The cases have not been consolidated but, by agreement, the present case is to be regarded as a test suit, and if plaintiff prevails, the plaintiffs in the other cases are to recover the amounts to be found due. Otherwise, the defendants will be entitled to dismissal of each companion suit.

At the trial of the case, attorney for plaintiff in his opening address made similar charges as heretofore stated, but when pressed for an answer as to whether there was any fraud in the actions of the board of review or the State tax commission, his answer was in the negative, qualified, however, by the statement that it was fraud to the extent that the respective bodies followed the result arrived at by the supervisor and so vehemently denounced by plaintiff. The trial court after carefully considering the charges in the declaration as amplified by counsel's opening statement entered an order of dismissal. Plaintiff appeals.

Plaintiff has followed the proper and necessary procedural steps before bringing suit by seeking relief first from the board of review and then the State tax commission, then paying the alleged illegal taxes under protest and bringing suit for recovery of the amount paid. There is no question but that assess-

ment on property shall be made at its true cash value. Article 10, § 7, Constitution of the State of Michigan (1908). Ascertaining the true cash value, however, presents many difficulties. A single sale or two of property does not determine the true cash value, as there may be peculiar and temporary economic conditions that determine a price and this may be particularly true in case of highly expensive and valuable property for which there is little demand, if any, at least for the time being. But recently in *Conroy v. City of Battle Creek,* 314 Mich. 210, 219, we discussed the difficulties of valuation and appraisal of urban properties, and approved of the hiring of experts to revalue and reappraise the city's properties. What we said therein is equally true of the valuation and appraisal of very valuable and expensive suburban homes located on the lake shore near the city. We stated:

"Proper percentages for depreciation, careful study of local values as affected by costs, recent cash sales, as well as all other elements must be considered. The valuation of real estate and improvements has always been difficult and presents many problems, and even with the applied science for valuation and appraisal, the true value cannot be obtained with mathematical exactitude, but by the application of these modern rules as developed, a much fairer degree of accuracy is arrived at than existed theretofore."

The words "cash value" as defined by 1 Comp. Laws 1929, § 3415 (Stat. Ann. § 7.27) is the usual selling price that could be obtained for it at the time of assessment, but not the price obtainable at a forced or auction sale. As stated in *Twenty-Two Charlotte, Inc., v. City of Detroit,* 294 Mich. 275, p. 283:

"Where property is singular in character and sales are separated by many years, there is no usual

selling price in the sense the expression is used to describe the focus of buyers and sellers of commodities actively exchanged in an open market. Nor did the legislature intend that a single event be conclusive. In the valuation problem the assessing officers had to resolve in the instant case, the test of the 'usual selling price' is merely a guide for determination; under the circumstances before us the definition provides a standard for a hypothetical or fictitious market. It was the duty of the assessors to consider the factors which motivate buyers and sellers to exchange their interests (*Olson* v. *United States,* 292 U. S. 246 [54 Sup. Ct. 704, 78 L. Ed. 1236]), and to exercise their judgment in an honest effort to determine at what point the inertia to trade is overcome.

"In *Cleveland-Cliffs Iron Co.* v. *Republic Township,* 196 Mich. 189, Justice OSTRANDER said:

" 'The legislative statement of the meaning of cash value, which is really a statement of tests to be applied in determining cash value, is not exclusive or inclusive. The tax law must be read as a whole. The general purpose of the law is to subject property to a proportionate payment of public levies. * * * It is usually persuasive of the value of a particular piece of property when its owner after negotiations sells it at private sale at a particular price. * * *

" 'The case for plaintiff is, I think, no better than this: The good faith, judgment, and conclusions of the assessing officers is opposed by the good faith, judgment, and conclusions of the vendor and vendee of the land, affected, in the case of the vendor and vendee, by private interest. But the duty, in this behalf, rests upon the assessing officers, and their discharge of it, in this case, cannot be interfered with by the court.' * * *

"Nor do we think the use of reproduction cost less depreciation as basis, with allowances for obsolescence and other relevant factors, is unfair or

fundamentally wrong so long as the result is fair and discrimination is absent.''

Conduct characterized as fraudulent by plaintiff consisted of the action of the supervisor in merely copying the valuation as found on the books for previous years as revised by ''the application of an allowance for depreciation of buildings and by a further percentage reduction, recommended by the board of State tax commissioners.'' We find nothing fraudulent about such conduct, although a more careful examination and reappraisal of the property would have been preferable. This could have been corrected by the board of review or the State tax commission. The other action of the supervisor complained of is that other property in the township not having the advantage of fronting on the lake shore was underassessed. Plaintiff claims that this resulted in illegal discrimination. We have not the facts before us. Plaintiff conceded that neither the board of review nor the board of State tax commissioners acted fraudulently. In fact, she concedes that the latter body at some time had recommended a reduction and the recommendation was carried out by the supervisor.

Plaintiff was not denied but on the contrary availed herself of the right to present her complaint and protest to the board of review and State tax commission. In the absence of fraud, the determination of the State tax commission was final. As stated by Mr. Justice Cooley in *Merrill* v. *Auditor General,* 24 Mich. 170, 172:

''The courts cannot sit in judgment upon supposed errors of the assessor, and substitute their own opinions for the conclusions he has drawn, where it is his judgment, and not theirs, to which the subject has been confided by the law.''

Appellee quotes from decisions in other States. While the statutes therein differ from our own in some respects, nevertheless, there was a review by a higher board, and the courts have held this to be final in the absence of fraud. *Eastern Columbia, Inc.*, v. *Los Angeles County,* 70 Cal. App. (2d) 497 (161 Pac. [2d] 407); *Spring Valley Coal Co.* v. *People,* 157 Ill. 543 (41 N. E. 874); *Burton Stock Car Co.* v. *Traeger,* 187 Ill. 9 (58 N. E. 418). In *City of Birmingham* v. *Oakland County Supervisors,* 276 Mich. 1, we referred to *Peninsula Iron & Lumber Co.* v. *Township of Crystal Falls,* 60 Mich. 510, wherein it was held that an assessment may be assailed if the supervisor or the board of review acted fraudulently. We did not hold that where there is a hearing which may be *de novo* before a higher tribunal, the latter's action is not final in the absence of fraud. The law and decisions in this State give a finality to the determination by the State tax commission in the absence of fraud. This is set forth in no uncertain terms in *Hudson Motor Car Co.* v. *City of Detroit,* 282 Mich. 69, 80 (113 A. L. R. 1472):

"Nor is the action of the local assessing officer, or of the local board of review, controlling where the jurisdiction of the State tax commission is invoked and it has acted in the premises. 1 Comp. Laws 1929, §§ 3543-3547.

" 'The State tax commission shall have general supervision of the administration of the tax laws of the State.' 1 Comp. Laws 1929, § 3713.

" 'It was intended to give large powers of review to the State board.' *Board of State Tax Com'rs* v. *Kohler,* 193 Mich. 420, 429.

"Where the jurisdiction of the State tax commission is invoked, its action shall be final. 1 Comp. Laws 1929, § 3422.   *   *   *

"Under the statutes, the State tax commission has the power to make a general or special review

of the tax rolls. After the tax rolls have been passed upon by local boards of review and are properly certified by them, no change may be made therein by the local board of review or by any local assessing officer. *Bialy* v. *Bay City,* 139 Mich. 495.

\* \* \*

"Under the Constitution and laws of this State, the final arbiter of value for taxing purposes which, when it has jurisdiction, determines the sale finally and conclusively, is the State tax commission. That value is fixed for the purposes of taxation. It is the basis of the levy and assessment of taxes."

This was reiterated in *Twenty-Two Charlotte, Inc.,* v. *City of Detroit, supra,* wherein we also said:

"Courts are slow to interpose their judgment to say that the assessment has transgressed reasonable limits. *S. S. Kresge Co.* v. *City of Detroit,* 276 Mich. 565 (107 A. L. R. 1258); *Sloman-Polk Co.* v. *City of Detroit,* 261 Mich. 689 (87 A. L. R. 1294); *Rowley* v. *Railway Co.,* 293 U. S. 102 (55 Sup. Ct. 55, 79 L. Ed. 222). In *Newport Mining Co.* v. *City of Ironwood,* 185 Mich. 668, reference was made to the statement of Mr. Justice Holmes in *Chicago, B. & Q. R. Co.* v. *Babcock,* 204 U. S. 585 (27 Sup. Ct. 326, 51 L. Ed. 636):

" 'The board was created for the purpose of using its judgment and its knowledge. (Citations omitted). Within its jurisdiction, except, as we have said, in the case of fraud or a clearly-shown adoption of wrong principles, it is the ultimate guardian of certain rights. The State has confided those rights to its protection, and has trusted to its honor and capacity as it confides the protection of other social relations to the courts of law. Somewhere there must be an end.' "

The order of dismissal by the trial court is affirmed and a like order will be entered in each of the 32 companion cases. A public question being

involved, no costs will be allowed in this or the companion cases.

CARR, C. J., and BUSHNELL, SHARPE, BOYLES, REID, NORTH, and DETHMERS, JJ., concurred.