*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LES D. JAVOR,

        Petitioner-Appellant,

v

TOWNSHIP OF PLYMOUTH,

        Respondent-Appellee.

UNPUBLISHED
January 27, 2022

No. 356238
Tax Tribunal
LC No. 20-000660-TT

Before: SAWYER, P.J., and SERVITTO and RICK, JJ.

PER CURIAM.

Petitioner appeals as of right the Tax Tribunal's final judgment determining the true cash value of petitioner's residential property in respondent Township of Plymouth for tax year 2020. We affirm.

## I. FACTS AND PROCEEDINGS

Petitioner purchased the property for $1,000,000 in July 2019. The property is located in a neighborhood that contains only four custom homes. For the 2020 tax year, the Township of Plymouth Assessing Department assessed the tentative true cash value of the property at $1,062,200. Petitioner appealed the assessment before the Tax Tribunal's Small Claims Division. Following an administrative hearing, an administrative law judge (ALJ) determined that the actual true cash value of the property was $1,112,400. Petitioner filed exceptions to the ALJ's proposed opinion and judgment. Ultimately, the Tax Tribunal issued a final opinion and judgment upholding the ALJ's determination that the 2020 true cash value of the property was $1,112,400. This appeal followed.

On appeal, petitioner argues that the Tax Tribunal made several errors in determining the property's true cash value. Specifically, petitioner asserts that the Tax Tribunal erred when it (1) declined to accept the actual sale price as the usual selling price of the property; (2) relied upon a single comparable property; (3) eliminated from consideration valid comparable properties; (4) relied upon a land value adjustment of $50 per square foot when conducting a comparable-sales analysis of the property and the sole comparable property utilized to determine the true cash value;

and (5) declined to consider petitioner's economic condition factor analysis. We disagree with each of petitioner's alleged errors.

## II. STANDARD OF REVIEW

"Review of decisions by the Tax Tribunal is limited." *Mich Props, LLC v Meridian Twp*, 491 Mich 518, 527; 817 NW2d 548 (2012). "In the absence of fraud, error of law or the adoption of wrong principles, no appeal may be taken to any court from any final agency provided for the administration of property tax laws from any decision relating to valuation or allocation." Const 1963, art 6, § 28. "The Tax Tribunal's factual findings are final if they are supported by competent, material, and substantial evidence on the whole record." *Mich Props, LLC*, 491 Mich at 527. "Substantial evidence must be more than a scintilla of evidence, although it may be substantially less than a preponderance of the evidence." *Drew v Cass Co*, 299 Mich App 495, 499; 830 NW2d 832 (2013) (cleaned up). "If the facts are not disputed and fraud is not alleged, our review is limited to whether the Tax Tribunal made an error of law or adopted a wrong principle." *Mich Props, LLC*, 491 Mich. at 527-528.

## III. SALES-COMPARISON ANALYSIS

Petitioner argues that the Tax Tribunal made errors of law and adopted erroneous principles when applying the sales-comparison approach to determine the true cash value of the property. We disagree.

" 'True cash value' is the starting point for determining the taxable value of real and tangible personal property in Michigan." *Detroit Lions, Inc v Dearborn*, 302 Mich App 676, 696; 840 NW2d 168 (2013) (cleaned up). "In general, property must be assessed at 50 percent of its true cash value." *Id*. MCL 211.27(1) defines "true cash value" as "the usual selling price at the place where the property to which the term is applied is at the time of assessment, being the price that could be obtained for the property at private sale . . . ." "True cash value is synonymous with fair market value." *Jones & Laughlin Steel Corp v Warren*, 193 Mich App 348, 353; 483 NW2d 416 (1992). "Therefore, the assessment must reflect the probable price that a willing buyer and a willing seller would arrive at through arm's length negotiation." *Huron Ridge LP v Ypsilanti Twp*, 275 Mich App 23, 28; 737 NW2d 187 (2007).

"There are three traditional methods of determining true cash value, or fair market value, which have been found acceptable and reliable by the Tax Tribunal and the courts. They are: (1) the cost-less-depreciation approach, (2) the sales-comparison or market approach, and (3) the capitalization-of-income approach." *Meadowlanes Ltd Dividend Housing Ass'n v Holland*, 437 Mich 473, 484-485; 473 NW2d 636 (1991) (cleaned up). "It is the Tax Tribunal's duty to determine which approaches are useful in providing the most accurate valuation under the individual circumstances of each case." *Id*. at 485. The Tax Tribunal "is not bound to accept either of the parties' theories of valuation. It may accept one theory and reject the other, it may reject both theories, or it may utilize a combination of both in arriving at its determination." *Jones & Laughlin Steel Corp*, 193 Mich App at 356. In this case, the Tax Tribunal applied the sales-comparison approach to determine the true cash value of petitioner's property. "The sales-comparison approach indicates true cash value by analyzing recent sales of similar properties, comparing them with the subject property, and adjusting the sales price of the comparable

properties to reflect differences between the two properties." *Meadowlanes Ltd Dividend Housing Ass'n*, 437 Mich at 485 n 19. "[W]hen using a sales-comparison approach, the appraiser should adjust the sales price of comparables for differences in size, age, condition, location, and other value influences that buyers and sellers of real property take into account . . . ." *Id*. at 503.

## A. REFUSAL TO ADOPT THE ACTUAL SALE PRICE AS THE TRUE CASH VALUE

Petitioner first argues that the Tax Tribunal erred when it declined to adopt the actual purchase price as the true cash value of the property. We disagree.

In *Antisdale v Galesburg*, 420 Mich 265, 278; 362 NW2d 632 (1984), our Supreme Court recognized that "the selling price of a particular piece of property is not conclusive as evidence of the value of that piece of property." Our Supreme Court explained:

> The Legislature has commanded that property be assessed as its "usual selling price." The most obvious deficiency in using the sales price of a piece of property as conclusive evidence of its value is that the ultimate sale price of the property, as a result of many factors, personal to the parties or otherwise, might not be its "usual" price. The market approach to value has the capacity to cure this deficiency because evidence of the sales prices of a number of comparable properties, if sufficiently similar, supports the conclusion that factors extrinsic to the properties have not entered into the value placed on the properties by the parties. [*Id*. at 278-279.]

MCL 211.27(6) similarly provides, in relevant part, that "the purchase price paid in a transfer of property is not the presumptive true cash value of the property transferred."

In the instant matter, the Tax Tribunal adopted the ALJ's conclusion that the parties' Comparable No. 1, a comparable property located in the same neighborhood as the subject property, with revisions, provided the best evidence of the true cash value of the property. In doing so, the Tax Tribunal reasoned that the ALJ accurately relied upon our Supreme Court's opinion in *Antisdale* and MCL 211.27(6) in support of the decision not to adopt the actual purchase price as the true cash value of the subject property. As later discussed in greater detail, the Tax Tribunal's adoption of the ALJ's conclusion that the parties' Comparable No. 1, with revisions, provided the best evidence of the true cash value of the property was supported by competent, material, and substantial evidence. Because it is well established that the selling price of a particular piece of property is not conclusive as evidence of the value of that piece of property, the Tax Tribunal did not make an error of law or adopt erroneous principles when it declined to accept the actual sale price as the true cash value of the property.

## B. COMPARABLE PROPERTIES

Next, petitioner argues that the Tax Tribunal erred by relying upon the sale of a single comparable property, Comparable No. 1, when calculating the true cash value of the property. We disagree.

Initially, petitioner has failed to support his assertion that the Tax Tribunal must rely on more than one comparable property when using the sales-comparison approach to calculate the

true cash value of a subject property. In support of his position, petitioner relies upon an excerpt from our Supreme Court's opinion in *Antisdale*, 420 Mich at 278-279, in which the Court explained why the selling price of a particular piece of property is not conclusive evidence of the value of that piece of property. Notably, our Supreme Court did not hold in *Antisdale* that the Tax Tribunal must rely on more than one comparable property when using the sales-comparison approach to calculate the true cash value of a subject property. *Id*. Furthermore, petitioner supports his position by relying upon an excerpt from our Supreme Court's opinion in *Moran v Grosse Pointe Twp*, 317 Mich 248, 254; 26 NW2d 763 (1947), which provides as follows:

> A single sale or two of property does not determine the true cash value, as there may be peculiar and temporary economic conditions that determine a price and this may be particularly true in case of highly expensive and valuable property for which there is little demand, if any, at least for the time being.

Again, our Supreme Court did not hold in *Moran* that the Tax Tribunal must rely on more than one comparable property when using the sales-comparison approach to calculate the true cash value of a subject property. Instead, our Supreme Court noted that the price paid on one or two occasions for a highly expensive and valuable property for which there is little demand does not conclusively establish the true cash value of the property. *Id*.

Additionally, petitioner's reliance on the Michigan State Tax Commission Assessor's Manual is unavailing. Under MCL 211.10e, assessing officials are required to use an assessor's manual prepared by the State Tax Commission "as a guide in preparing assessments." As made clear by our Supreme Court in *Danse Corp v Madison Hts*, 466 Mich 175, 181; 644 NW2d 721 (2002), the Michigan State Tax Commission Assessor's Manual may be used as a guide "but does not itself have the force of law." Accordingly, petitioner's reliance on the Michigan State Tax Commission Assessor's Manual in support of the assertion that the Tax Tribunal made an error of law is unavailing.

Furthermore, the Tax Tribunal clearly considered the applicability of five comparable properties included in the parties' sales-comparison analyses and chose the parties' Comparable No. 1 as most indicative of the value of the subject property. Accordingly, the Tax Tribunal's decision rested on the analysis of several comparable properties. Even assuming that reliance on the sale of a single comparable property would be an error of law, that did not occur here.

Petitioner also argues that the Tax Tribunal erred when it declined to consider other comparable properties when calculating the true cash value. We disagree.

"It is the Tax Tribunal's duty to determine which approaches are useful in providing the most accurate valuation under the individual circumstances of each case." *Meadowlanes Ltd Dividend Housing Ass'n*, 437 Mich at 485. "Regardless of the valuation approach employed, the final value determination must represent the usual price for which the subject property would sell." *Id*. "In other words, a valuation method is wrong only if it does not lead to the most accurate determination of the taxable property's true cash value or fair market value." *President Inn Props, LLC v Grand Rapids*, 291 Mich App 625, 639; 806 NW2d 342 (2011).

The Tax Tribunal selected the valuation approach that led to the most accurate valuation under the circumstances of the case. The Tax Tribunal adopted the ALJ's conclusion that the parties' Comparable No. 1, with revisions, was the most reliable indicator of value given that it was located in the same four-home "custom-exclusive" neighborhood as the subject property. In doing so, the Tax Tribunal adopted the ALJ's decision to reject as reliable indicators of value those properties that were common to the parties' sales-comparison analyses because such properties were located outside of the four-home "custom-exclusive" neighborhood where petitioner's property was located. The Tax Tribunal similarly adopted the ALJ's decision to reject as a reliable indicator of value respondent's Comparable No. 3 for this same reason. Lastly, the Tax Tribunal adopted the ALJ's decision to reject as a reliable indicator of value respondent's Comparable No. 2 because the property was not sufficiently exposed to the open market, and respondent failed to include adjustments for differences in custom features such as an in-home theater.

The Tax Tribunal did not commit an error of law or adopt an erroneous principle when it adopted the ALJ's conclusion that the parties' Comparable No. 1, with revisions, was the most reliable indicator of value. The record reflects that the parties' Comparable No. 1 was sold approximately three months before petitioner purchased the subject property, the parties' Comparable No. 1 was the only comparable property located in the same four-home "custom-exclusive" neighborhood as the subject property, and both parties provided analyses including various adjustments for the differing features of the two properties. "The weight to be accorded to the evidence is within the Tax Tribunal's discretion." *Great Lakes Div of Nat'l Steel Corp v Ecorse*, 227 Mich App 379, 404; 576 NW2d 667 (1998). Moreover, the Tax Tribunal "is not bound to accept either of the parties' theories of valuation. It may accept one theory and reject the other, it may reject both theories, or it may utilize a combination of both in arriving at its determination." *Jones & Laughlin Steel Corp*, 193 Mich App at 356 (citations omitted). Therefore, the Tax Tribunal did not commit an error of law or adopt an erroneous principle when it adopted the ALJ's conclusion that the parties' Comparable No. 1, with revisions, was the most reliable indicator of value.

Petitioner also argues that the Tax Tribunal erred when it declined to consider additional evidence concerning the validity of those properties that were common to the parties' sales-comparison analyses presented as part of petitioner's second exception to the ALJ's proposed opinion and judgment. Again, we disagree.

In support of its decision not to consider additional evidence proffered by petitioner, the Tax Tribunal relied upon Tax Tribunal Rule 792.10287. Tax Tribunal Rule 792.10287(1) provides:

> A copy of *all evidence* to be offered in support of a party's contentions shall be filed with the tribunal and served upon the opposing party or parties not less than 21 days before the date of the scheduled hearing, unless otherwise provided by the tribunal. Failure to comply with this subrule may result in the exclusion of the valuation disclosure or other written evidence at the time of the hearing because the opposing party or parties may have been denied the opportunity to adequately consider and evaluate the valuation disclosure or other written evidence before the date of the scheduled hearing. [Mich Admin Code, R 792.10287(1) (emphasis added).]

Rule 792.10287(1) supports the Tax Tribunal's decision not to consider additional evidence proffered by petitioner after the scheduled hearing took place. Furthermore, the Tax Tribunal's decision is also supported by Tax Tribunal Rule 792.10289. Rule 792.10289(1) provides:

> A party may submit exceptions to a decision by a referee or an administrative law judge, other than tribunal member, by filing the exceptions with the tribunal and serving a copy on the opposing party or parties within 20 days of the entry of the decision. The exceptions are limited to the evidence submitted prior to or otherwise admitted at the hearing and any matter addressed in the proposed opinion and judgment and shall demonstrate good cause as to why the decision should be adopted, modified, or a rehearing held. For purposes of this subrule, "good cause" means error of law, mistake of fact, fraud, or any other reason the tribunal considers sufficient and material. [Mich Admin Code, R 792.10289(1).]

Rule 792.10289(1) specifically provides that "exceptions are limited to the evidence submitted prior to or otherwise admitted at the hearing and any matter addressed in the proposed opinion and judgment . . . ." Notably, Rule 792.10289 does not provide that an individual may file additional evidence in support of his or her exceptions. Therefore, the Tax Tribunal did not err when it declined to consider additional evidence concerning the validity of those properties that were common to the parties' sales-comparison analyses presented as part of petitioner's second exception to the ALJ's proposed opinion and judgment.

## C. LAND VALUE ADJUSTMENT

Petitioner argues that the Tax Tribunal erroneously relied upon a land value adjustment of $50 per square foot when conducting a comparable sales analysis of the property and the parties' Comparable No. 1. We disagree.

As stated, "[t]he sales-comparison approach indicates true cash value by analyzing recent sales of similar properties, comparing them with the subject property, and adjusting the sales price of the comparable properties to reflect differences between the two properties." *Meadowlanes Ltd Dividend Housing Ass'n*, 437 Mich at 485 n 19. Where the methodology used to analyze the prices of comparable properties is flawed, "the result of the market approach to valuation will also be flawed." *Antisdale*, 420 Mich at 279.

In the instant matter, the Tax Tribunal adopted the ALJ's sales-comparison approach in determining that the true cash value of the property was $1,112,400. In conducting the sales-comparison analysis, the ALJ found that respondent's downward adjustment of $53,800 for 1,076 square feet of additional living area in the parties' Comparable No. 1 was reasonable and adopted the adjustment. The ALJ valued the additional living area in the parties' Comparable No. 1 at $50 per square foot. This adjustment was more favorable than the adjustment proposed in petitioner's own sales-comparison analysis, in which petitioner proposed a downward adjustment of only $49,496. Petitioner's proposed adjustment valued the additional living area in the parties' Comparable No. 1 at $46 per square foot, which was consistent with the portion of an appraisal comparing the subject property to the parties' Comparable No. 1 proffered by petitioner. Petitioner did not assert that a greater downward adjustment should have been applied until he filed his exceptions to the ALJ's proposed opinion and judgment. As previously indicated, under Rules

792.10287 and 792.10289, the Tax Tribunal was not obligated to consider petitioner's additional evidence concerning the average price per square foot of each comparable property included in petitioner's sales-comparison approach. For these reasons, the methodology used to analyze the prices of comparable properties was not flawed, and the ultimate result of the Tax Tribunal's sales-comparison analysis was not flawed. The Tax Tribunal properly relied upon a land value adjustment of $50 per square foot when conducting a comparable sales analysis of the property.

## IV. ECONOMIC CONDITION FACTOR ANALYSIS

Finally, petitioner argues that the Tax Tribunal erred when it declined to consider petitioner's economic condition factor (ECF) analysis in determining the true cash value of the property. We disagree.

Under the cost-less-depreciation approach, "true cash value is derived by adding the estimated land value to an estimate of the current cost of reproducing or replacing improvements and then deducting the loss in value from depreciation in structures, i.e., physical deterioration and functional or economic obsolescence." *Meadowlanes Ltd Dividend Housing Ass'n*, 437 Mich at 484 n 18. As described in the Michigan State Tax Commission Assessors Manual:

> Most mass appraisal models rely on a cost-less-depreciation approach and adjust its results to what properties are selling for through the use of an ECF.[1] The ECF is prepared by analyzing properties which have been sold and then comparing their respective cost-less-depreciation of the buildings (i.e., building value) to that portion of the sale prices attributable to those buildings. [Michigan State Tax Commission, *Michigan Assessors Manual*, Volume III (February 2018), ch 3, p 40.]

The Tax Tribunal did not make an error of law or adopt an erroneous principle when it declined to consider petitioner's economic condition factor analysis in determining the true cash value of the property. Although petitioner included a spreadsheet detailing his economic condition factor analyses, petitioner failed to proffer any evidence in support of the underlying figures in his analyses. Indeed, petitioner failed to proffer any evidence concerning land values or the current cost of reproducing or replacing improvements to the analyzed properties. "The Tax Tribunal is under a duty to apply its expertise to the facts of a case to determine the appropriate method of arriving at the true cash value of property, utilizing an approach that provides the most accurate valuation under the circumstances." *Jones & Laughlin Steel Corp*, 193 Mich App 353. Moreover, the Tax Tribunal "is not bound to accept either of the parties' theories of valuation. It may accept one theory and reject the other, it may reject both theories, or it may utilize a combination of both in arriving at its determination." *Id*. at 356. Because petitioner failed to present evidence in support of his economic condition factor analysis, the Tax Tribunal did not make an error of law or adopt an erroneous principle when it declined to consider petitioner's economic condition factor analysis in determining the true cash value of petitioner's property.

---

[1] "An EFC adjusts the assessor's use of the Assessors Manual to the local market." Michigan State Tax Commission, *Michigan Assessors Manual*, Volume III (February 2018), ch 3, p 40.

Affirmed.

/s/ David H. Sawyer
/s/ Deborah A. Servitto
/s/ Michelle M. Rick