# CASES

IN THE

# SUPREME COURT OF ILLINOIS.

## CENTRAL GRAND DIVISION.

### JANUARY TERM, 1875.

ABEL LARRISON *et al.*

*v.*

THE PEORIA, ATLANTA AND DECATUR RAILROAD
COMPANY *et al.*

1. CHANCERY PRACTICE—*as to answer of corporation.* Although it is
more regular to require a corporation to answer under seal, yet, where
answer under oath is dispensed with, and a railroad company, which is
merely a nominal party, answers without seal, and the court below refuses
to strike the answer from the files, this court will not reverse for that cause
alone, especially where it appears that the same defense was set up by
others, and the result was the same as if the company had been defaulted.

2. SAME—*answer of municipal corporation.* The answer of a munici-
pal corporation to a bill in chancery need not be signed by an officer
thereof. Where the name of the corporation is written to such an answer,
and there is nothing to show that it is unauthorized, it will be sufficient.

3. CONSTITUTIONAL LAW—*presumption as to passage of laws.* Where a law is signed by the Speakers of both houses, and approved by the Governor, it will be presumed to have been passed in conformity with all the requirements of the constitution, and that it is valid, until the presumption is overcome by legitimate proof, clear and convincing in its character.

4. SAME—*sufficiency of proof to overcome such presumption.* Where the journals of the Senate showed that Senate bill No. 453, for "An act to incorporate the Peoria, Atlanta and *Danville* Railroad Company," was introduced, read a first and second time, and referred to a committee, and that the committee to whom was referred Senate bill No. 453, for "An act to incorporate the Peoria, Atlanta and *Decatur* Railroad Company," reported back the same with amendments, and that the same was engrossed for a third reading, and finally passed upon the call of the ayes and noes: *Held*, that the proof failed to raise even a doubt of the passage of the bill, and that these entries failed to show that there were two bills pending of the same number, and that the number showed its identity.

APPEAL from the Circuit Court of Logan county; the Hon. LYMAN LACEY, Judge, presiding.

Messrs. JOHN M. & JOHN MAYO PALMER, for the appellants.

Messrs. INGERSOLL & PUTERBAUGH, and Mr. W. S. BUSH, for the appellees.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

This was a bill in chancery, filed by appellants, in the Logan circuit court, on behalf of themselves and other taxpayers, against the railroad company, town collectors and others, to restrain the collection of a tax.

The bill alleges that the town auditors in the towns of Atlanta and Oran, on the 12th of August, 1873, made a certificate that there was due certain sums, to be paid for interest on bonds issued to aid in the construction of the railroad. The bill charged that there was issued by the authorities $37,000 of bonds, and that the town authorities had delivered a portion, and that the president of the railroad company had

possessed himself of another portion, without the consent of the supervisor or town clerk; that the town auditors had certified that the interest on the bonds was a town charge, and delivered the same to the county clerk, to be extended as a tax on the real and personal property in the town; and that the county clerk claims that he, in the discharge of his duty, is compelled to extend the same on the taxable property in the towns.

The bill charges that the railroad company claims to be organized under a special law of the General Assembly, under which the officers acted in constructing the road, but complainants deny that it was ever constitutionally adopted by the General Assembly, and claim that all acts performed in the levy of this tax are therefore void; that the road is not completed, and the officers of the company represented that they would proceed promptly to construct the railroad from Peoria, by way of Atlanta, to Decatur, and that any bonds that should be voted therefor should be faithfully devoted to the construction of the road, and the company had, or soon would have, sufficient funds for that purpose; that all of these representations were false, and were made knowing them to be false, and with intent to cheat and defraud the town and taxpayers, and to obtain the bonds without a valuable consideration therefor.

It is charged that it never was intended in good faith to complete the road; that it is not completed; that the work has not been prosecuted promptly and in good faith; that the officers of the company still hold the bonds, or have converted them to their own use, and that they have sold the franchises and abandoned the construction of the road. On filing the bill, a temporary injunction was issued staying the collection of the tax.

The railroad company, Dunham, Dills, Lambert and the town of Atlanta answered the bill, the answer being verified by the affidavit of Dills and Dunham, to be used on a motion to dissolve the injunction. Prior to the hearing of that motion,

14    LARRISON *et al. v.* P., A. & D. R. R. Co. *et al.* [Jan. T.

Opinion of the Court.

complainants moved to suppress the answer, because, so far as it related to the railroad company, it was not under the seal of the company, and was not signed by one of its officers; and as to the answer of the town of Atlanta, because it was not signed by an officer of the town.    This motion was overruled. The answer denies all of the material allegations of the bill.

Subsequently, a motion to dissolve the injunction came on to be heard, on bill, answer and affidavits filed.    The court dissolved the injunction and the bill was dismissed, and complainants bring the case to this court by appeal.

The answer, amongst other things, stated that the bonds were not in the hands of the company, but had been sold and delivered to innocent purchasers.    And this and other allegations in the answer were fully sustained by the proof, and appellants make no point on that question in their argument, but insist that the court erred in refusing to strike the answer from the files, and in assessing damages for the wrongful suing out of the injunction.

The answer was called for without oath, and was only sworn to for the purpose of being used as an affidavit on the motion to dissolve.    Such an answer has always been held to be a mere pleading, only denying the allegations of the bill and putting complainant to his proof, and to disclose any special defense he may rely upon.    And although it is more regular to require a corporation to answer under seal, we feel no inclination to reverse a cause on that ground alone.    Where the evidence sufficiently sustains a full answer, to which there is no objection, we would not be warranted in reversing because one of the defendants had failed to attach its seal. There is no suggestion that this answer is not sufficient as to Dunham, Dills and Lambert.    It sets up the entire defense, which applies as well to the railroad company and the town of Atlanta as it does to them, and the same is true as to the officers having charge of the collection of the taxes.

Had the railroad company set up a defense peculiar to themselves, then it would have been different.    The proceed-

ing was virtually against the bondholders, and the railroad was but a nominal party; and had the railroad company made no effort to answer, but had been defaulted, still the court would not have continued the injunction against the collection of the money to pay the interest to the bondholders, unless it had been apparent from the evidence that the bonds were void, or some equitable grounds were shown against the bondholders. And as the evidence required the dissolution of the injunction, even if the railroad company had been defaulted, we must decline to reverse on the ground that the answer of that company was not under seal. It might be treated as a nullity, and as not being on file, and still the dissolution would be correct.

The objection taken to the answer of the town of Atlanta, is, that it was not signed by an officer of the town. This is answered by the case of *Fulton County* v. *Miss. and Wabash R. R. Co.* 21 Ill. 338, where it is held that a defendant need not write his own name to his answer. Here, the name of the corporation was written, and there is nothing to show that it was unauthorized, nor are we aware of any rule of practice that requires the president or any officer to sign his name, in addition to that of a municipal corporation, to an answer to a bill or other instrument. That is done, as their charters authorize, in the name of the corporation.

On examining the evidence, we find that it sustains the finding of the damages decreed by the court on dissolving the injunction. The sum allowed was reasonable, and was shown to be so by the evidence. The statute authorizes it, and the court was required, on the evidence adduced, to allow the damages and render a decree therefor.

We now come to the consideration of the question of whether the charter of the railway company, under which this subscription was made, and the bonds issued and taxes levied, was constitutionally adopted. It appears from a certified copy of the journals of the Senate that, on the 28th of January, 1869, Mr. Nicholson introduced Senate bill No. 453, for "An

act to incorporate the Peoria, Atlanta and *Danville* Railroad Company," which was read a first time, and on his motion the rule was unanimously dispensed with, the bill read a second time, and referred to the Committee on Railroads. It also appears that Mr. McManus, from the Committee on Railroads, to which was referred Senate bill No. 453, for "An act to incorporate the Peoria, Atlanta and Decatur Railroad Company," reported the same back as amended, and recommended its passage as amended. The report of the committee was concurred in, and the bill ordered to be engrossed for a third reading. The journals show that this bill, No. 453, was regularly passed on the call of "ayes" and "nays."

The objection taken is, that there were two bills of the same number, but of different titles; that one was regularly introduced, twice read, and referred to the appropriate committee, and that a member of the same committee reported back another bill of the same number; that the act under which the company claims was but once read before its passage. If this position is true, then the bill failed, for a want of compliance with constitutional requirements, to become a law.

But is the position well taken? The constitution required every bill to be read on three several days in each house, unless, in case of urgency, three-fourths of the house where such bill was so depending should deem it expedient to dispense with the rule. And the question is, was the bill for this act read three times in the Senate before its passage by that body? If the entries on the journal refer to the same bill, then the requirements of the organic law are satisfied. If not, then the act is void. The question, then, is one of identity. Do these entries show there was one or two bills acted upon by the Senate? The number is the same throughout. About that, there is not the pretense of the slightest doubt, and it is manifest that, to have more than one bill pending at the same time, with the same number, would lead to confusion. It would defeat the very object of numbering

bills, which is to preserve their identity and prevent confusion.

The placing a number on each bill by each house is well calculated to aid in the dispatch of business, in enabling members to vote intelligently, and the secretary to note the proceedings under each. It is adopted as a matter of convenience, and as a means of always identifying a bill. It is true, that the fundamental law does not refer to numbers of bills, but leaves each house the choice of means to identify their bills, so as the journals shall show that each was read the requisite number of times, and was passed by the constitutional vote.

That there was but one bill, and that it was passed, there seems not to be the slightest doubt. If the Senate were in the habit of permitting their secretary to place the same number on several bills introduced in that body, there then might be a doubt created; but such is not the practice, and when we find a bill introduced and read the first and second time. by one title, and referred to a committee, and it is reported back with the same number, but a change is made in the title, and the report says the bill has been amended by the committee, is there the slightest reason to doubt that it is the same? We think not. The presumption would rather be that the secretary had mistaken the title, and so entered it on his journal. Or, as the committee report that they had amended the bill, that the change in the title was one of the amendments they had made.

The constitution does not require bills to be entitled, but that is done as a means of identification. If a bill were introduced without a title, and regularly passed, and the title then adopted, we are unable to see that there would be any constitutional objection to such a law, for that reason. The title to a bill is usually adopted after it has passed the house, and is not an essential part of the bill, although it is of a law.

2—77TH ILL.

If we find a law signed by the Speakers of both houses, and approved by the Governor, we must presume that it has passed in conformity to all the requirements of the constitution, and is valid, until the presumption is overcome by legitimate proof. And in such a case, the evidence must be clear and convincing. It is by no means sufficient to only create a doubt whether the requirements of the organic law have been observed, but it must be clearly proved. In this case we do not think that the proof offered to impeach this law has produced that effect, but it has failed to even cast a doubt on the proceedings by which it was adopted.

A careful consideration of this entire record fails to disclose any error for which the decree of the court below should be reversed, and it must be affirmed.

*Decree affirmed.*