# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF ILLINOIS.

THE BURTON STOCK CAR COMPANY

*v.*

JOHN E. TRAEGER, Collector, *et al.*

*Opinion filed October 19, 1900.*

1. TAXES—*in absence of fraud, valuation of property is not subject to judicial supervision.* Section 1 of article 9 of the constitution, concerning the payment of taxes by every person or corporation in proportion to the value of property, to be ascertained by some person or persons to be elected or appointed in the manner provided by the General Assembly, excludes judicial supervision of the valuation of property except in case of fraud.

2. SAME—*equity will take jurisdiction to grant relief against fraudulent valuation.* If the valuation of property for taxation is so grossly out of the way as to indicate that the assessing body could not have been honest in its valuation, equity will take jurisdiction to grant relief, and, though the excessive valuation does not by itself establish fraud, the court may look into the attending circumstances to determine the honesty of the valuation.

3. SAME—*fraud by assessor may be purged by action of board of review.* Culpable neglect of duty, and even fraud by the assessor in valuing property for taxation, is purged by the hearing and action of the board of review, before whom the complaining tax-payer has voluntarily appeared and fully submitted his case, and against

whose decision confirming the assessment he makes no charge of fraud or dishonest conduct.

4. SAME—*section 3 of the Revenue act of 1898 construed.* The provisions of section 3 of the Revenue act of 1898, creating a board of assessors in counties of 125,000 or more inhabitants, but ,making the township assessor *ex officio* deputy assessor in townships, in such counties, not lying wholly within the limits of one city, are not unconstitutional, as authorizing two classes of assessing bodies in Cook county, since they merely create two classes of deputy assessors, whose action is subject to review by the board of review and becomes its action when revised or adopted.

5. SAME—*act of 1898 is not special in dividing counties into classes for assessment.* The provisions of the Revenue act of 1898, dividing counties into classes for the purpose of assessing property for taxation, are not in violation of the constitutional provisions requiring uniformity of taxation and forbidding the passage of special laws regulating county or township affairs.

APPEAL from the Circuit Court of Cook county; the Hon. E. F. DUNNE, Judge, presiding.

This is a bill, filed by the appellant company, a corporation organized under the laws of the State of Maine, with its principal office at Portland in that State, against the town collector of the town of Lake, and the county collector of the county of Cook, to enjoin the collection of a tax against the personal property of the appellant in that town, upon the ground that the valuation of the property, as fixed by the board of assessors, was excessive and fraudulent. It appears from the allegations of the bill, that the appellant company is engaged in the business of renting, on a mileage basis, cars adapted to the transportation of all kinds of live stock, and has complied with the laws of Illinois, authorizing it to do business in that State, and has a branch office in the city of Chicago, and a shop, in which it repairs cars, belonging to it, and used in its business, in said town of Lake. The bill was demurred to by the defendants thereto, the appellees here. The court sustained the demurrer, and dismissed the bill for want of equity at complainant's costs, and dissolved the injunction, which had been issued upon

the filing of the bill upon the recommendation of a master in chancery.   The present appeal is prosecuted from the decree, sustaining the demurrer, and dismissing the bill.

M. J. Scrafford, and Edward A. Bern, for appellant.

Julius A. Johnson, County Attorney, and Frank L. Shepard, Assistant County Attorney, for appellees.

Mr. Justice Magruder delivered the opinion of the court:

*First*—The main ground, upon which it is sought to enjoin the collection of the tax upon the personal property of the appellant company, is that the valuation of appellant's property in the town of Lake for the purposes of assessment by the board of assessors of Cook county was largely in excess of its real value. This court has often decided, that a court of equity will not entertain jurisdiction to enjoin the collection of a tax, upon the ground of the excessive valuation of the property, assessed by the assessing officer or officers.

Section 1 of article 9 of the constitution of 1870 provides that "the General Assembly shall provide such revenue as may be needful by levying a tax, by valuation, so that every person and corporation shall pay a tax in proportion to the value of his, her or its property—such value to be ascertained by some person or persons to be elected or appointed in such manner as the General Assembly shall direct, and not otherwise." This provision of the constitution has been construed to mean, that the valuation of property for the purpose of taxation is to be ascertained by some person or persons elected or appointed by the legislature.   The constitution expressly prohibits the ascertainment of such value by any other person than a person elected or appointed by the legislature.   Hence, the courts have no power to fix the valu-

ation of property for taxation. The determination of the value to be fixed on property liable to be assessed "is not, in the absence of fraud, subject to the supervision of the judicial department of the State." (*Keokuk Bridge Co.* v. *People,* 185 Ill. 276; *Republic Life Ins. Co.* v. *Pollak,* 75 id. 292; *Spencer & Gardner* v. *People,* 68 id. 510). So far, therefore, as relief was sought by the bill in this case for the reason that the property assessed was valued at too high a figure, the action of the court below in sustaining the demurrer was proper.

*Second*—It has, however, been held that, where the valuation is so grossly out of the way as to show that the assessor could not have been honest in his valuation, and must have known of its excessive character, such valuation will be accepted as proof of a fraud upon his part against the tax-payer; and, in such case, a court of equity will grant relief. Whether or not there has been fraud in the excessive valuation of property for taxation is a question, which will depend largely upon the circumstances of each particular case, in which the valuation is made. The excessive valuation by itself does not establish fraud; but the attending circumstances may be looked into in order to determine whether or not the valuation was honestly made. (*Pacific Hotel Co.* v. *Lieb,* 83 Ill. 602; *New Haven Clock Co.* v. *Kochersperger,* 175 id. 383; *East St. Louis Connecting Railway Co.* v. *People,* 119 id. 182; *Spring Valley Coal Co.* v. *People,* 157 id. 543).

The attendant circumstances in this case, which are relied upon, in connection with the alleged excessive valuation, to show that such valuation must have been dishonestly made, are the alleged omissions, on the part of the board of assessors, of certain requirements of the Revenue act. Section 16 of the Revenue law of February 25, 1898, requires the assessor or his deputy to "call at the office, place of doing business or residence of each person required by this act to list property and list his name," and imposes upon such assessor or his deputy the

duty of requiring "such person to make a correct statement of the taxable property in accordance with the provisions of this act." Section 16 further provides that "the person listing the property shall enter a true and correct statement of such property owned by him on the first day of April of that year in the form prescribed by law, which shall be signed and sworn to to the extent required by this act by the person listing the property, who shall deliver such statement to the assessor; and the assessor shall thereupon assess the value of such property, and enter the valuation in his books." Section 17 of the act of 1898 provides, that "the assessor shall furnish to each person required to list personal property a printed blank schedule, forms to be furnished by the Auditor of Public Accounts, upon which shall be printed a notice" set forth fully in the section. Section 17 also provides that "every person required to list personal property or money shall fill out, subscribe and swear to, and return to the assessor, in person or by mail, at the time required, such schedule in accordance with law, giving the numbers, amounts, quantity and quality of all the articles enumerated in said schedule by him possessed, or under his control, required to be listed by him for taxation;" and that "the assessor shall determine and fix the fair cash value of all items of personal property, including all grain on hand on the first day of April, and set down the same, as well as the amounts of notes, accounts, bonds and moneys, in a column headed 'full value,' and ascertain and assess the same at one-fifth part thereof, and set down said one-fifth part thereof in a column headed 'assessed value,' which last amount shall be the assessed value thereof for all purposes of taxation." Section 19 of the act provides, that "the assessor shall require every person to make, sign, and swear to the schedule provided for by this act."

The bill charges, that the assessor did not call at the office of appellant, and list its name, and require it to

make a correct statement of its taxable property; that he did not furnish to appellant the printed blank schedule, with the printed notice thereon, so that it could fill out, subscribe and swear to, and return the schedule as the law. directed; that the assessor did not require appellant to make, sign and swear to the schedule; that he did not appraise the property at its fair cash value, etc.; and that he did not determine and fix the fair cash value of the property by items. Appellant did not make or return any schedule

Appellant claims, that the failure of the assessor to call upon it, and furnish the blank schedule, and do the other things above mentioned, considered in connection with the excessive valuation of the property, indicates a fraudulent and corrupt intent on the part of the officials, clothed with the power to value and assess its property. The requirements of the act of 1898, as above set forth, are said to be mandatory in their character; and it is insisted that, without a compliance with them, the assessor had no authority to make a valuation or assessment of the property. It was undoubtedly a culpable neglect of duty, on the part of the assessor or his deputy, to fail to call upon the appellant, and furnish it with a printed blank schedule, and do the other things required by sections 16, 17 and 19, of the act, as above referred to. (*Pacific Hotel Co.* v. *Lieb, supra*). But whether or not a failure to comply with these requirements operated to make the assessment void is a matter, which it is not necessary to decide in this case. A different question would have been presented, if the appellant had not appeared before the board of review as hereinafter stated.

But the appellant alleges in its bill, that its general manager appeared before the board of review, and gave that board full information in regard to its personal property in the town of Lake, and of what the property consisted, and what its full fair cash value was. • The bill makes no charge of fraud against the board of review.

It simply alleges, that the board of review "for some inexplicable reason, unknown to complainant, made no change in said assessment  *  *  *  made by the board of assessors upon its said property." By section 34 of the act of 1898, the board of review, at the meeting therein provided for, "upon application of any tax-payer or upon their own motion, may revise the entire assessment or any part thereof of any tax-payer, and correct the same as shall appear to them to be just," increasing no tax-payer's assessment without giving him notice in writing and the opportunity to be heard, etc. By section 35 of the act, the board of review has power to "assess all property subject to assessment which shall not have been assessed by the assessors." By the same section, "on complaint in writing of any person or corporation that his or its property has been assessed too high, they shall review the assessment and correct the same, as shall appear to be just.  *  *  *  The board, also, upon its own motion, may increase, reduce or otherwise adjust the assessment of any individual or corporation, and shall have full power over the assessment of any individual or corporation, and shall have full power over the assessment and may do anything in regard thereto that the assessors might and could originally have done," etc.

The appellant voluntarily submitted itself to the jurisdiction of the board of review, and presented for the consideration of that board all the facts in regard to the value of its personal property, which, as it claims, it had no opportunity of presenting to the board of assessors. The board of review had full power to correct the assessment if it was unjust in any respect. They did not change the valuation, placed upon appellant's property by the board of assessors, but allowed such valuation to remain as made. As the board of review is not charged with having been guilty of any fraud, it will be presumed that they did their duty, and exercised, in a fair and reasonable way, the judgment and discretion conferred upon

them by the statute. If there was a mistake in the judgment of the board of assessors, or even fraudulent conduct on their part in making the valuation, such mistake or fraud is purged by the hearing, review and action of the board of review. Such was the holding of this court in regard to a similar proceeding under the old Revenue law, before the adoption of the recent act of 1898.

In *Spring Valley Coal Co.* v. *People*, 157 Ill. 543, we said (p. 548): "Even if we should assume that the values as fixed by the assessor of the town of Hall were fraudulently made by him, the results claimed by appellant do not follow. It petitioned the town board of review, and secured reductions in some of the values. It then appealed to the county board, and had before it a full hearing as to its supposed grievances, and secured from it still further reductions of values. There is no intimation, that the county board was governed or influenced by either fraud or intimidation. Appellant, having availed itself of the remedies afforded by the statute, the decision made by the board of supervisors was final and conclusive, and it must be regarded that the fraud, if any, that there was in the original assessment, was purged out of it; otherwise it would be in the power of appellant, by securing the election of a prejudiced or dishonest assessor, to avoid the payment of any taxes whatever upon its large and valuable property." The same doctrine is announced in the case of *New Haven Clock Co.* v. *Kochersperger, supra.* Inasmuch as the appellant here availed itself of the remedy afforded by the statute, and went before the board of review with its complaint against the action of the board of assessors, the decision made by the board of review must be regarded as final and conclusive. Whatever fraud there may have been in the original assessment was purged out of it by the action of the board of review.

For the reasons thus stated, we are of the opinion that the acts of omission, charged against the board of

assessors, or the assessor, or his deputy, taken in connection with the alleged over-valuation, did not entitle appellant to relief under its bill, in view of the allegation therein that it appeared before the board of review, and presented its case fully to that board, and, in view of the further fact, that it makes no charge of fraud or dishonest conduct or intention against the latter board.

*Third*—It is further charged in appellant's bill, that the provisions of the law, under which the assessment was made, are void upon the alleged ground that such provisions cut the city of Chicago into two parts for assessment purposes, one part to be assessed by the township assessor, and the other part by the board of assessors. In support of this contention, counsel for appellant refer to, and quote, the following provisions from section 3 of the act of February, 1898, to-wit: "In all counties of this State containing 125,000 or more inhabitants there is hereby created and established a board of assessors, consisting of five persons, not more than four of whom shall be residents of any one city, to be known as the board of assessors of said county.  *  *  *  In all townships in such counties not lying wholly within the limits of one city the township assessor shall be *ex officio* the deputy assessor to make the assessments in the township wherein he is elected," etc.

It is contended on the part of the appellant, that the board of assessors is thus left to make the assessment in such townships only as lie wholly within the limits of one city. Counsel say, that that part of the city, embraced within townships not lying wholly within the limits of the city, must be assessed by township assessors, while the other portion of the city must be assessed by the board of assessors. We do not think that the act is unconstitutional in the respect thus indicated. It is not clear, that the legislature intended assessments in Cook county within the limits of the city of Chicago to be made by one class of assessors, and assessments in

the county outside of the city to be made by another class. As a matter of fact, there is but one class of assessors. The law provides for one board of assessors for the whole county. There are two classes of deputy assessors, those appointed by the board for the city, and those elected for the towns outside of the city; but the difference is only in the fact, that one class is appointed, and the other is elected. Both are deputy assessors only, and are under the direction and supervision of the board of assessors. The work of both is subject to the revision and approval of the board of assessors, and becomes the work of that board, when it is revised or adopted by such board.

Counsel say, that the law in the respect now under consideration, is local and special to that particular locality in the city, where the power to assess is lodged in the board of assessors, and in that respect regulates township and county affairs in violation of the constitution. The contrary view was held by this court in *People ex rel.* v. *Comrs. of Cook County,* 176 Ill. 576. In the latter case, it was held that the act of 1898 was not special in its division of counties into classes for the purposes of assessments. It was also there held, that the act of 1898 did not violate the requirement of uniformity in taxation; and it was also there further held that the act did not violate section 22 of article 4 of the constitution, forbidding the passage of special laws regulating county and township affairs; and in that case we used this language (p. 588): "It does not purport or attempt to regulate county and township affairs; but the sole object of the act is to provide means for the assessment of property, and it cannot be said that, by doing so, the legislature has attempted to regulate the county and township affairs of any county or township by a special law, as the act is applicable to the whole State, and, for the purpose of facilitating and regulating assessments, so that they shall be uniform and more satisfactory than heretofore,

has classified the counties of the State." (See, also, *People
ex rel.* v. *Onahan,* 170 Ill. 449; *People* v. *Knopf,* 183 id. 410).

The decree of the circuit court, sustaining the demurrer and dismissing the bill, is affirmed.

*Decree affirmed.*