(No. 31476.—

Edward C. Giebelhausen, Appellant, vs. Richard J. Daley, Director of Revenue, *et al.*, Appellees.

*Opinion filed September 21, 1950—Rehearing denied Nov. 17, 1950.*

HOFFMAN & HOFFMAN, of Springfield, for appellant.

IVAN A. ELLIOTT, Attorney General, of Springfield, (ROBERT J. BURDETT, and JOHN T. COBURN, both of Chicago, and WALTER E. LINDGREN, of Springfield, of counsel,) for appellees.

Mr. JUSTICE GUNN delivered the opinion of the court:

At the November term, 1949, of the Sangamon County circuit court, plaintiff, Edward C. Giebelhausen, filed a petition for leave to bring a suit in equity, in accordance with "An Act in relation to suits to restrain and enjoin the disbursement of public moneys by officers of the State," to enjoin the Director of Revenue, the Director of Finance, the Auditor of Public Accounts, and the State Treasurer, all of the State of Illinois, from disbursing money, or incurring any expenses, by virtue of two certain acts of the General Assembly, enacted at the 1949 session thereof, and thereupon the circuit judge of said county entered an order permitting the plaintiff to file such complaint, which was accordingly filed and service of process had upon all of said defendants.

The complaint raises the question of the validity of two statutes of the State of Illinois enacted at the regular session of the General Assembly of 1949, *viz.*, "An Act to amend Sections 1, 2, 4, 5, 7, 8, 9, 10, 10a, 13, 14, 15, 16, 17, 32, 38, 39, 41, 44, 45, 96, 100, 101, 102, 103, 107, 108, 109, 111, 126, 127, 140 and 142, to add Sections 2a, 2b and 2c to, and to repeal Sections 3, 46, 94 and 95 of the 'Revenue Act of 1939,' filed May 17, 1939, as amended," (Laws of 1949, p. 1261,) and hereafter referred to as the amendatory act; and "An Act making appropriations for certain ordinary and contingent expenses of this State in connection with tax assessments," (Laws of 1949, p. 227,) hereafter referred to as the appropriation act.

The defendants made a motion to dismiss the complaint on the ground that it is substantially insufficient in law, and upon a hearing the court sustained the motion and entered a decree that the complaint of the petitioner be dismissed, with prejudice, for want of equity.

As the title suggests, the amendatory act makes changes necessary to incorporate into the Revenue Act provisions for a county assessment supervisor "in each county of less than 500,000 population, *which does not have an elected board of assessors."* The several sections of the 1939 Revenue act enumerated in the title (not repealed) are changed and amended so as to accommodate the language thereof to new sections 2, 2a, 2b and 2c. Other substantial changes are made extending the power of the county assessment supervisor and diminishing the power of township and county assessors, referred to in more detail hereafter.

The amended sections just referred to are as follows:

"§ 2. The office of county assessment supervisor is established in each county of less than 500,000 population which does not have a board of assessors as provided for by this Act and the offices of county assessor and county supervisor of assessments in such counties are abolished. During December, 1949 in each such county and during September,

1953 and every fourth year thereafter in each such county under township organization and during September, 1952 and every fourth year thereafter in each such county not under township organization, the county board thereof shall submit to the Department a list of not less than three (3) nor more than ten (10) names of persons whom it regards as qualified for the office of county assessment supervisor by virtue of experience or training in the field of real estate appraisal and property tax administration. The Department shall consider and ascertain the qualifications of each candidate and shall certify to the county board within sixty (60) days of receipt of such list the names of those persons whom it considers competent to hold the office. On receipt of this certified list the county board shall appoint one person therefrom to hold the office of county assessment supervisor. If on the list submitted by the county board to the Department there is found no person qualified for the position, the county board shall in like manner submit a second list to the Department. If the Department does not certify any name from the second list the county board may either submit a third list to the Department or at its option may appoint any qualified person to such office but the appointment of any person other than a person certified by the Department as competent shall require the affirmative vote of not less than two-thirds of the members of the county board and the vote in respect thereto shall be by ayes and nays and entered on the records of the board. The term of office of the county assessment supervisor in counties under township organization shall be four (4) years commencing on the first Monday in December, 1949 and every fourth year thereafter, and in counties not under township organization shall be three (3) years commencing on the first Monday in December, 1949 and thereafter shall be four (4) years commencing on the first Monday in December, 1952, and every fourth year thereafter and until a successor is appointed and qualified. The county board

shall fill any vacancy in the office in like manner as in the case of an original appointment. The Department shall in such a case take special action in the examination of candidates for the position, certifying to the county board the names of those approved not later than one (1) month after receiving a list from the county.

"The county assessment supervisor shall hold no other lucrative public office or public employment and shall receive annual compensation as follows: In counties of less than 10,000 population, $2,000; in counties of 10,000 or more but less than 25,000 population $2,750; in counties of 25,000 or more but less than 50,000 population, $3,500; in counties of 50,000 or more but less than 75,000 population, $4,000; in counties of 75,000 or more but less than 100,000 population, $4,750; and in counties of 100,000 or more population, $6,000. The salary of each county assessment supervisor shall be paid by the State, on the warrant of the Auditor in monthly installments, and the expenses of travel by the county assessment supervisor to and from state-wide meetings of assessment officials sponsored by the Department shall also be paid from state funds on the warrant of the Auditor.

"The county board shall provide necessary office space for the county assessment supervisor and except as otherwise provided in this Act, shall provide for the payment of all necessary expenses of the office out of the county treasury.

"Upon the appointment and qualification of the first county assessment supervisor, all records, books and papers heretofore pertaining to the office of county assessor or county supervisor of assessments shall be delivered to the county assessment supervisor.

"§ 2a. In counties under township organization having a county assessment supervisor, the township assessor shall be ex officio deputy assessor under the county assessment supervisor and shall assist him in making the assessments

in the township wherein he is elected; provided that if in any such township the township assessor shall not be able by himself alone within the time allowed by law to perform the necessary work in making such assessment in said township, then any additional deputy assessor or deputy assessors required to make such assessment shall be appointed by the county assessment supervisor.

"The compensation of the township assessor shall be as follows: In townships containing less than 14,000 inhabitants they shall receive not less than five dollars ($5.00) per day; but additional compensation may be allowed, making their entire compensation a sum not exceeding one thousand dollars ($1,000.00); and in townships containing 14,000 or more inhabitants, they shall receive a sum not exceeding five thousand dollars ($5,000.00) per annum. In townships containing 20,000 or more inhabitants the township assessor shall pursue no other gainful occupation. The compensation of township assessors within the limits herein provided shall be fixed by the board of town auditors and shall be based upon the time actually employed and such assessors shall make affidavit as to the time so employed. In addition to their compensation, assessors shall also receive travel and transportation expenses, the amount of which shall be determined by the board of town auditors. Such compensation and expenses shall be paid out of the town treasury.

"§ 2b. The county assessment supervisor may appoint one or more suitable persons to act as deputy assessor to assist him in making assessments and such deputy shall take and subscribe an oath of office honestly and faithfully to perform all the duties of the office under the direction of the county assessment supervisor. Such deputy shall have power to administer all oaths authorized by law to be administered by assessors. On or before the first day of April in each year the county assessment supervisor shall assemble all deputy assessors, including township assessors,

for consultation and shall give such instructions to them as shall tend to a uniformity in the action of the deputy assessors in his county. The deputy assessors, including township assessors, shall make their returns to the county assessment supervisor at such time or times as he shall direct on or before the first day of June.

"§ 2c. Each county assessment supervisor shall prepare and maintain in accordance with rules and procedures prescribed by the Department, tax maps and up-to-date lists of property owners' names and addresses and property record cards for all of the real estate in the county and shall procure at regular intervals from the records maintained by the county recorder information relating to transfers of real property; provided that he shall not duplicate the work of any full-time township assessor who maintains up-to-date and complete tax maps, ownership lists and property record cards in accordance with rules and procedures prescribed by the Department, and provided further that this shall not preclude the maintenance in the office of the county assessment supervisor of duplicate copies of such records. In preparing the original tax maps, lists and property record cards, the county assessment supervisor shall consult with the Department and the Department shall furnish to each county assessment supervisor such supplies and equipment as may, in its judgment, be necessary to set up the original set of maps, lists and records required by this section.

"The county assessment supervisor shall be the assessor for the county in which he is appointed and shall also serve as clerk of the county board of review and shall be present at all hearings held by such board and shall receive no additional compensation for such services."

The other changes consist largely of substituting the words "county assessment supervisor" for the words "supervisor of assessments," and eliminating the making of any independent assessment of property by the township

assessor except as a deputy assessment supervisor; and otherwise limits the duties and powers of elected township assessors.

Under section 2 of the act of 1939, (Ill. Rev. Stat. 1947, chap. 120, par. 483,) for which the new section 2 is substituted, the county treasurer was *ex officio* supervisor of assessments. `He appointed his own deputies, whose salaries were fixed by the county board, and their compensation paid by the county. He was required to keep his assessment book open for public inspection. Comparison discloses several differences in the functions and powers of the supervisor of assessments and the county assessment supervisor, more specifically noted hereafter.

Among the grounds upon which the amendatory act is assailed as being unconstitutional are the following: (a) that it constitutes an unjustifiable interference by the executive with the legislative or judicial departments of the government, contrary to article III of the constitution, relating to the division of powers; (b) that it abolishes local taxation, with the effect of allowing an executive officer to become the assessing agency; (c) that it violates section 2 of article II of the constitution of Illinois, and the fourteenth amendment of the Federal constitution, in depriving citizens of counties, where there is not an elected board of assessors, of equal protection of the law; (d) that it constitutes a local or special law contrary to section 22 of article IV; (e) that it does not operate uniformly, as it exempts counties having a board of assessors, and discriminates against the counties not having an elected board of assessors; (f) and that as an amendatory act it amends certain other acts without complying with section 13 of article IV of the constitution providing no law shall be revised or amended by reference to its title only, but the law revised, or the section amended, shall be inserted at length in the new act; and (g) other objections not necessary to recite here.

The principal grounds argued are: (a) that the classification of the counties in which the county assessment supervisor shall be appointed is discriminatory and arbitrary, and violates section 22 of article IV; and (b) that under article III of the constitution for the distribution of power the two sections are an indirect authority for executive officers to become or to appoint the assessing officers in the counties and townships, contrary to the constitution.

The argument that the act is local and special, and not based upon a proper classification, is based upon the following provisions of the act: (1) The office of county assessment supervisor is established in each county of less than 500,000 population which *does not have an elected board of assessors;* (2) the provision of new section 4 that only counties of 160,000 or more and less than 500,000 may have a board of assessors; (3) the provision of section 96 that in counties of less than 500,000 the board of assessors, or the county assessment supervisor, as the case may be, shall have authority to revise the assessment; (note,— under the 1940 census there were no counties between 160,000 and 500,000 except St. Clair County;) (4) the elected township assessor becomes a deputy of the county assessment supervisor; (5) deputy assessors are to be appointed by the county assessment supervisor instead of the assessor; (6) section 17 provides the county assessor, county assessment supervisor, board of assessors, board of review, or board of appeals, as the case may be, shall assess all property except railroad property, thus preventing township assessors, by giving others the authority to assess, from performing the duty for which they are elected.

It will be observed that the effect of these various provisions of the amendatory statute is to put all counties in the State under 160,000 population within the provisions of the act requiring a county assessment supervisor. This necessarily follows because there is no provision for such counties to have an elected board of assessors.

It is contended by appellees that the statute in effect makes a division and classification according to population, and therefore is valid under authority of *People ex rel. Green* v. *Board of Comrs.* 176 Ill. 576, and *Burton Stock Car Co.* v. *Traeger,* 187 Ill. 9. In the first-mentioned case the validity of an act creating a board of review in counties of over 125,000 was held valid. All that was decided in that case was a single question as to whether, under the circumstances, the State could be divided into two classes of counties, those over and those under 125,000 population. There were no other conditions or requirements accompanying the population specification, and, in fact, there was no discussion or decision on the question of classification. The main subject discussed was whether making the law effective, before the time of review of assessments under the old law had expired, violated the constitution. We do not regard this case as controlling.

The *Traeger case* did not decide the question of classification involved here, as the point raised was that the act regulated county and township affairs contrary to the constitution. Neither of the cases mentioned involved statutes where population, with conditions annexed such as those presently referred to, was considered. On the other hand, there have been a number of cases in which the population basis of classification, when accompanied by conditions or reservations, has been held improper. In *Devine* v. *Board of Comrs.* 84 Ill. 590, it was held that a statute making a classification which applied only to Cook County on a population basis effective for a period of but six years was invalid, unless some special reason was shown for a basis of the classification. In *People ex rel. Deneen* v. *Martin,* 178 Ill. 611, a township classification, by which certain territory, which had previously constituted a part of an incorporated town, by disconnection acquired certain interests which justified giving it rights different from other townships, was held bad. In this case we said: "It has

become the settled rule of construction in this State that an act general in its terms and uniform in its operation upon all persons and subject matter in like situation is a general law, and one that does not bring within its limits all persons and subject matter in substantially the same situation and circumstances is a special or local law."

So, in *People ex rel. Stuckart* v. *Knopf*, 183 Ill. 410, while it is said that classification by population in certain instances was valid, yet, where the act assailed provided that in counties over 125,000 population the indebtedness could not exceed $2\frac{1}{2}$ percent, whereas in counties under that population they could become indebted to the extent of 5 percent, the act was held to be unreasonable and arbitrary. In *Knopf* v. *People ex rel. City of Chicago*, 185 Ill. 20, the court held that one county could not be singled out for legislation on grounds of difference brought about by population, unless such conditions actually existed, and that the court would determine whether the classification was reasonable or otherwise.

In *People ex rel. Breckon* v. *Board of Election Comrs.* 221 Ill. 9, the act in question provided that in counties over 125,000 the nominations for certain officers could be made by political conventions, while in all other counties they had to be under a primary election. The court held that there was no reasonable ground for difference between nominations for the same offices in a county of over 125,000 population than in counties of less than that population. In *People ex rel. Harding* v. *Chicago and Northwestern Railway Co.* 340 Ill. 102, the General Assembly had enacted a law providing that in counties of over 500,000 population, and in which there were school districts of a certain population there could be levied an additional school tax for building purposes. This was held to be an unreasonable and arbitrary classification and illegal. In *People ex rel. Clarke* v. *Jarecki*, 363 Ill. 180, there was likewise involved an act of the General Assembly providing for ·

special installment plans for paying taxes in counties of over 500,000, and this was held to be in violation of the constitution.

From a resumé of the cases in which population seems to have been the principal factor in making the classification, there is no uniformity in holding that population alone is a sound basis of classification for the application of laws, but on the contrary in a large number of cases, especially in instances where there is a reservation or condition annexed to the population evaluation, such classification is held to be illegal, arbitrary and void.

From the cases cited, it seems that population may be a proper basis of classification where it is obvious there is a different remedy required, or a condition to be alleviated, which is the result of density or sparsity of population, since it is common knowledge that such a situation sometimes requires more or different facilities to effect the public purpose remedied, and the legislature is presumed to have made an investigation and to have determined the facts before enacting the legislation. In such instances population may furnish a proper foundation, since the law is uniform as to those affected by it. Such were the situations presented in 176 Ill. 576, and 187 Ill. 9. In those cases the difference in population in Cook County from that of any other county differentiated in important particulars the requirements of the community, thus making them a proper subject of legislation. *Marallis* v. *City of Chicago,* 349 Ill. 422; *Connolly* v. *Union Sewer Pipe Co.* 184 U.S. 540, 46 L. ed. 679.

The principle applicable to a proper classification of persons subject to a law must rest on some difference which has a reasonable and just relation to the act in respect to which the classification is proposed. The situation calling for the law must exist and not be created by the legislation making the classification. Thus, a different debt limitation allowed in counties of over 125,000 popu-

lation, or a different manner of nominating officers in counties of over 125,000, or a different time and manner for the payment of taxes in counties of over 500,000, as pointed out in the foregoing cases, rendered the statutes resting on such classifications illegal, and in violation of the constitution, because the ground of the classification did not arise from difference in population, but from the existence of powers or rights granted by the legislature based on the application of the population factor. In such cases since there was no reason for a difference in the localities for incurring the public debt, or nominating county officers, or in the obligation to pay taxes in different counties, the classification was not based upon existing conditions or situations, but upon legislative *fiat*. Other cases analyzed above observe the same principle, and are in nowise in opposition to the cases relied upon by the appellees.

In the instant case, the classification of counties required to have a county assessment supervisor does not rest upon the factor of population alone, and we assume that no one would contend there would be a substantial difference in the assessment procedures in counties of 165,000, as compared to those of 160,000, and certainly not as much difference as there would be between those of 160,000 and those of 15,000 or 20,000 population, all of which are in the class created by the act in question. In reality the statute does not make the classification by population, but in fact bases it upon the question of whether the legislature has or has not granted counties the right to have an elected board of assessors; and, since by section 4 it is only counties with a population of over 160,000 that are authorized to elect a board of county assessors, all of the counties in the State but one, for lack of the power to have an elected board of assessors, are designated a class for an entirely different type of assessment procedure. Since the act is not based upon population alone, but is coupled with the

absence of a board of assessors that the county is given no authority to create, the classification is necessarily dependent upon a difference or condition made by the legislature, and not one that is inherent in the location to which the law applies. This kind of classification has not to our knowledge ever been approved by this court.

In *Marallis* v. *City of Chicago,* 349 Ill. 422, we said: "While it is competent for the legislature to determine upon what difference a distinction may be made for the purpose of statutory classification of objects otherwise having a resemblance, and while the legislature is not required to be scientific, logical or consistent in its classification, yet these propositions however stated are always subject to the qualification that the power must not be arbitrarily exercised and that the distinction has a reasonable basis when considered with reference to the purposes of the legislation. [Citations.] Each person subject to the laws has a right that he shall be governed by general, public rules. Laws and regulations entirely arbitrary in their character, singling out particular persons not distinguished from others in the community by any reason applicable to such persons, are not of that class. Distinctions in rights and privileges must be based upon some distinction or reason not applicable to others. (*Harding* v. *People,* 160 Ill. 459.) It is only when such distinctions exist that differentiate, in important particulars, persons or classes of persons from the body of the people, that laws having operation only on such particular persons or classes of persons have been held to be valid enactments. *Braceville Coal Co.* v. *People,* 147 Ill. 66."

In the *Harding case* the law assailed required coal mines, whose product was shipped by rail or water, to weigh the coal mined for the benefit of its employees; and in the *Braceville case,* where the law attacked required only certain corporations to pay wages weekly, the principle announced in the quotation above was applied and both acts

held invalid, because there was no reason why a mine which shipped coal by rail, or why certain selected corporations should pay wages at specified times, were differentiated in any way from others like situated, so as to render them subject to special legislation.

In *Jones* v. *Chicago, Rock Island and Pacific Railway Co.* 231 Ill. 302, in discussing this question, it was held there must be some actual substantial difference between those affected by the classification and others in the State or community when considered with reference to the purposes of the legislation, and illustrated the distinction by pointing out that physicians might be properly placed in a class alone relating to the practice of medicine, but on the other hand if the act related to the law of descent of such a class it would be void.

There can be no actual substantial difference in counties arising from the mere fact the General Assembly gives one the right to an elected board of assessors and withholds such privilege from another. The distinction is wholly artificial, and created solely for the purpose of making a class, and hence offends section 22 of article IV of the constitution.

The other serious objection to the validity of the amendatory act, and in particular, to sections 2, 2a, 2b and 2c is that these sections in effect place in the executive branch of the government a proper function of the legislative department, contrary to article III, which requires each department of government to exercise power only properly belonging to it, and not to exercise any power properly belonging to either of the others.

An analysis of these new sections of the amendatory act indicates a departure from the law amended in the following respects: (1) the manner of appointing the assessment supervisor; (2) the powers given him; and (3) their effect upon related laws. The matter of appointment, while ostensibly made by the county board of super-

visors, is hampered and limited by such requirements and restrictions as to, in effect, make the appointment of county assessment supervisor that of the Department of Revenue, and not of the board. It can hardly be doubted that requiring the county board to send in not less than three nor more than ten names of candidates to the Department of Revenue, making the latter the sole judge of their competency, and, in case none of the first list sent is found to be competent, to again send another like list of candidates, and, if none on this list are likewise found to be suitable to the Department of Revenue, the county board may then select a county assessment supervisor, provided he is elected by a two-thirds vote of the members of the full Board, has such effect.

Sections 45 and 53 of the Counties Act (Ill. Rev. Stat. 1949, chap. 34, pars. 45 and 54,) provide that a quorum of the county board shall consist of a majority of its members, and the majority of such quorum may transact business. Thus, the power of the county board to select the county assessment supervisor is so hampered and restricted by the requirements which the Department of Revenue may exact as to the selection and competency of such supervisor that its apparent power of selection is but a shadow of the Department of Revenue.

That the legislature might provide that the county assessment supervisor be designated by the Department of Revenue, to assess and value property in accord with section 1 of article IX of the constitution, without coming within the prohibition of article III may be conceded; yet, when these new sections are carefully considered, it will be noted the Department is not given such power directly, but only by the exercise of new and different requirements made to control the county board in the appointment of such official, thus, to this extent, regulating the action of the county board in the selection of its own official, which is prohibited by section 22 of article IV of the constitution.

Section 1 of article IX requires everyone to pay tax in proportion to the value of his property, "such value to be ascertained by some person or persons to be elected or appointed in such manner as the General Assembly shall direct." The law under consideration purports to give the appointing power to the county board, but in actuality it is but the other voice of the Revenue Department, to which is delegated the right to say who, and under what direction, as the appointee of the Board, shall assess property in each county. The Revenue Department is delegated the power to do what the constitution requires be done by the General Assembly. Under the constitution, neither a judicial officer nor an executive officer may be delegated to levy taxes. (*People* v. *Commonwealth Edison Co.* 367 Ill. 260.) The Department of Revenue is an executive department. Neither may the power of taxing be delegated to any person other than the corporate authorities provided for such purpose. (Const., sec. 10, art. IX; *Wetherell* v. *Devine*, 116 Ill. 631; *Morgan* v. *Schusselle*, 228 Ill. 106.) And an assessment made by a person other than the one properly qualified to do so is void. *Central Illinois Public Service Co.* v. *Swartz*, 284 Ill. 108.

Uniformity in taxation, as required by the constitution, implies equality in the burden of taxation, and this equality in burden cannot exist without uniformity in the mode of assessment as well as the rate of taxation. (*Hanover Fire Insurance Co.* v. *Harding*, 327 Ill. 590; *Greene* v. *Louisville & Interurban Railroad Co.* 244 U.S. 499, 61 L. ed. 1280; *Pierce* v. *Green*, 229 Iowa, 22, 294 N.W. 237.) Thus, it has been held that a law that applied to only one county of large population offended the constitutional provision of the State of Michigan almost identical with the Illinois prohibition against special legislation, rendering an assessment thereunder and the resulting tax void. The court was unable to perceive any reasonable relation between assessment procedure in a county of over 1,500,000

and those counties where the next population was about 250,000. *Great Lakes Steel Corp.* v. *Lafferty,* 12 Fed. Supp. 55; affirmed 300 U.S. 29, 81 L. ed. 485.

Even though an assessment supervisor may be created by the General Assembly, with the powers to assess or value property under section 1 of article IX, yet, such power of the legislature to prescribe the manner of valuing or assessing property does not authorize the enactment of a law under which the executive department is given the right to require appointment under the pretense it is an appointment of the county board. And *a fortiori* the power to make the law cannot be delegated to the assessment supervisor or to the Department of Revenue. (*People ex rel. Rice* v. *Wilson Oil Co.* 364 Ill. 406.) Yet, section 2c gives undefined power to the Department of Revenue when it provides: "Each county assessment supervisor shall prepare and maintain in accordance with the rules and procedures prescribed by the Department of Revenue, tax maps," lists, addresses, etc. And, likewise, section 2b authorizes the county assessment supervisor to assemble all deputy assessors and township assessors for consultation, and "shall give such instructions to them as shall tend to a uniformity in the action of the deputy assessors in his county."

Finally, section 2 leaves an absolute discretion in rejecting or approving appointments by requiring that the proposed appointee must be a person the Department "regards as qualified for the office of county assessment supervisor," and the Department is required to certify the names of those persons "whom it considers competent to hold the office," without any rules or definitions provided by law to test this broad discretion given the Department. Such a delegation of indefinite power in sections 2, 2b and 2c is repugnant to the constitution, under the well-settled principle that such provisions are so indefinite and incomplete as to put within the power of the Department

and the county assessment supervisor, respectively, the power to make the law, which province is exclusively given under the constitution to the General Assembly. *Chicago-land Agencies, Inc.* v. *Palmer,* 364 Ill. 13; *People ex rel. Moore* v. *Beekman & Co.* 347 Ill. 92; *People ex rel. Judges Retirement System* v. *Wright,* 379 Ill. 328, at 339; *McDougall* v. *Lueder,* 389 Ill. 141.

We might observe that the act, under the constitution, is an amendatory law; does not purport to be complete within itself, and, this being true, other laws may not be amended or modified without being expressly set forth at length in the new act. (Art. IV, sec. 13.) The act under consideration, without reference thereto, amends section 9-86 of chapter 24, relating to the election of township assessors, in that, under this statute they are no longer township officials but are in fact the deputies of the assessment supervisor. And it likewise amends and alters in part section 53 of chapter 34, relating to the power of a quorum of the county board to transact business, and in lieu thereof substitutes a special law with respect to the appointment of one out of the many employees, agents and officials it is entitled to select by a majority of a quorum of the board. The law is well settled that this is a violation of the constitution. The rule is tersely stated in *People* v. *Knopf,* 183 Ill. 410, in the following language: "if the act is merely an attempt to amend the old law * * * by intermingling new and different provisions with the old ones or by adding new provisions so as to create out of the existing laws and this act together an act * * *" then the constitution is violated. To the same effect are *O'Connell* v. *McClenathan,* 248 Ill. 350; *Badenoch* v. *City of Chicago,* 222 Ill. 71; *People ex rel. Gramlich* v. *City of Peoria,* 374 Ill. 313; *Illinois Liquor Control Com.* v. *Chicago's Last Liquor Store, Inc.* 403 Ill. 578.

Enough has been said to show that sections 2, 2a, 2b and 2c not only violate section 22 of article IV, and arti-

cle III, as well as section 13 of article IV, but they danger-ously impinge upon other sections of the constitution. This doubtless occurs in an effort to draft an entirely new scheme of assessment on to an old law based upon differ-ent methods of classification, with different powers vested in elective officials, with the apparent object of making 101 counties in the State of one class, and Cook County another class. It might be remarked in passing that there are no counties which come within a third class, *viz.*, 160,000 to 500,000 population. We think that sections 2, 2a, 2b and 2c are void for the reasons set forth above. Other sec-tions and provisions of this statute are objectionable, but since the amendatory act cannot stand without those speci-fied above, upon which the entire amendatory act is predi-cated, the act as a whole must fall.

This leaves for consideration the act designated as the "Appropriations act," but since this act relates entirely to the salaries and expenses of the new officers created under the amendatory act, which we hold void, and does not authorize expenditures of money for any other purpose, we will discuss it but briefly.

This act is known as Senate Bill No. 687. It was orig-inally introduced under the title, "A bill for an act making an appropriation to the Department of Revenue for refunds in accord with the provisions of the Motor Fuel Tax Law, approved March 25th, 1929, as amended." It purported to dispose of $10,750,000 for the purpose of reimbursing and repaying, in accordance with section 13 of the Motor Fuel act, persons who overpaid fuel taxes. In such form the bill passed three readings in the Senate, and the first reading in the House. On second reading in the House amendment No. 1 was made, by striking out the *entire substance* of the bill, leaving only the number and the words "A Bill," and inserting a new title, "An Act mak-ing appropriations for certain ordinary and contingent ex-penses in this State in connection with tax assessments,"

and by striking out all of section 1, and inserting in lieu thereof "an appropriation to the Department of Revenue of $632,625 for property tax division." On the following day, June 30, 1949, the bill, as amended, passed the third reading in the House, over the protest of two members, who objected that it was not in accord with the constitutional requirement of three readings in each House. On the same day the Senate concurred with the House in the adoption of the said bill. Thus, a bill, with the title and subject matter originally relating to an appropriation to the Department of Revenue for refunds, authorized by the Motor Fuel Tax Act, passed after three readings in the Senate and one reading in the House, was changed on the second reading in the House to relate to an appropriation to pay the salaries of the officers created by the amendatory act, discussed above.

Section 13 of article IV of the constitution, provides that every bill shall be read at large on three different days in each House. And it is the contention of appellant that under the facts above this constitutional provision was not observed, and consequently the appropriation bill is invalid. This provision is clear and concise,—"Every bill shall be read at large on three different days in each House;" and it has been held by this court that a failure to observe this constitutional requirement shall render the bill void. *People ex rel. Zeno* v. *Illinois State Board of Dental Examiners,* 278 Ill. 144; *People ex rel. Sellers* v. *Brady,* 262 Ill. 578; *People ex rel. Beardsley* v. *Wallace,* 70 Ill. 680.

However, amendments germane to the subject matter may be made without the proposed act, as amended, being read three times in each House. (*Commissioners of Sny Island Levee Drainage Dist.* v. *Shaw,* 252 Ill. 142; *People ex rel. Gibbons* v. *Clark,* 296 Ill. 46; *Stevenson* v. *Montgomery,* 263 Ill. 93.) In order to come within the rule that an amendment need not be read three times in each House, it must be germane to the general subject of the

bill as originally introduced. *People ex rel Brady* v. *LaSalle Street Trust and Savings Bank,* 269 Ill. 518.

The term *germane,* is defined in *Dolese* v. *Pierce,* 124 Ill. 140, in the following language: "Literally, 'germane' means 'akin,' 'closely allied.' It is only applicable to persons who are united to each other by the common tie of blood or marriage. When applied to inanimate things, it is, of course, used in a metaphorical sense, but still the idea of a common tie is always present. Thus, when properly applied to a legislative provision, the common tie is found in the tendency of the provision to promote the object and purpose of the act to which it belongs." Substantially the same language was used in *City of Chicago* v. *Reeves,* 220 Ill. 274, at page 298.

While it is true that the title of a bill has been held not to be an essential part of it, it is a part of the law when enacted. (*Larrison* v. *Peoria, Atlanta and Decatur Railroad Co.* 77 Ill. 11.) It is in order, therefore, to examine the language of the original bill to ascertain whether the one finally adopted is the original bill, properly amended, or a substituted bill, dealing with a new subject matter.

The original bill was to appropriate money for refunds to taxpayers, in accordance with a certain provision of the Motor Fuel Tax Act, (Ill. Rev. Stat. 1947, chap. 120, par. 429,) which authorized refunds in certain cases. After this bill had been adopted in the Senate, after three separate readings, every word of the original bill was stricken, except the number thereof, "687," and the first words, "A Bill," and then there was added to this number and the words "A Bill" new language, which provided for the salaries and expenses to be paid by the Revenue Department in the Property Division, to be incurred under the amendment to the Revenue Act. This is claimed by the Attorney General to be an amendment, and is said to be germane to the original bill.

The object of the constitutional provision is to keep the members of the General Assembly advised of the contents of the bills it is proposed to enact into laws, by calling them specifically to their attention three several times, on three different days. For this court to hold a new bill, which bears no similarity to that originally introduced, except only the appropriation for a different purpose, is germane to the original, would render this clause of the constitution nugatory by construction, and invite disregard of its salutary provisions.

We think there was a complete substitution of a new bill under the original number, dealing with a subject which was not akin or closely allied to the original bill, and which was not read three times in each House, after it had been so altered, in clear violation of section 13 of article IV of the constitution.

Our conclusion is that both the amendatory act relating to the creation of the office of county assessment supervisor, and the appropriation act, providing for the payment of the salaries and expenses, are unconstitutional and void, and the decree of the circuit court of Sangamon County is accordingly reversed, and the cause remanded, with directions to grant the relief prayed for in plaintiff's complaint.

*Reversed and remanded, with directions.*

Per CURIAM: In a petition for rehearing, fear is expressed that the collection of taxes for the current year will be jeopardized. The law under consideration having been held invalid, the law prior to its enactment is still in effect. The rehearing is denied.